HEARD APRIL TERM, 1875.

## DANIEL *vs.* SWEARENGEN.

The relation of master and servant exists in this State as at common law.

To constitute the relation of master and servant, it is not necessary that the contract of service should be in writing.

One who contracts to serve as a farm laborer comes within the relation of master and servant.

The statutes of this State do not prescribe the only modes of redress to which a master may resort where the contract between him and his servant is violated.

A master has his remedy, as at common law, against one who entices or persuades his servant to leave his employment.

BEFORE COOKE, J., AT ABBEVILLE, APRIL TERM, 1874.

Action by Thomas A. Daniel against Ansel Swearengen and James Swearengen for enticing plaintiff's servants to leave his employment.

The complaint alleged that on the 1st of January, 1872, the plaintiff made contracts with three persons of color to serve him for one year from that date, two as laborers in his farm and one as a domestic and house servant; that on the 5th of February of the same year, the defendants, well knowing said persons to be the servants of the plaintiff, wrongfully enticed and persuaded them to leave the employment of the plaintiff and enter into the service of the defendants, and that a day or two afterwards plaintiff sent a written notice to one of the defendants informing him of the said engagement.

The answer denied, on information and belief, the contract with plaintiff alleged in the complaint. It also denied all knowledge on defendant's part of such contract, if one existed; admitted that on or about the 26th of January, 1872, they employed the persons named in the complaint, and that they were then in their employment as laborers on their farm, and it also admitted the giving of notice as alleged.

At the trial the material allegations of the complaint were proved—the contract of service with the plaintiff being a verbal one.

At the close of plaintiff's case, defendants moved for a nonsuit on the following grounds:

1. That the domestic relation of master and servant does not exist in South Carolina.

2. That none of the legal incidents of that relation in England or elsewhere apply to laborers under contract with employers in South Carolina.

3. The contract between them, to be valid, must be in writing, and must be attested.

4. That the statutes of this State prescribe the only redress in cases of violation of the contract by either of the parties to it.

5. That the employer cannot maintain an action for enticing or otherwise persuading or causing a laborer, and especially an agricultural laborer, to leave his services, and thereby violate his contract.

The motion was denied.

The jury found for the plaintiff $600.

The defendants appealed on the grounds taken in their motion for a nonsuit.

*Burt*, for appellants:

The appeal rests mainly on the proposition that the domestic relation of master and servant does not exist in South Carolina.

The relation of master and servant, unlike that of parent and child, husband and wife, is not a natural relation, but is social and conventional.

Blackstone (vol. 1, p. 242,) says "it is founded on convenience." Chancellor Kent (lecture 32, part 4, p. 258,) says: "The relation of master and servant rests altogether upon contract. The one is bound to render the service, the other to pay the stipulated compensation."

"There seems to be, according to the law of England, a difference between menial and other servants, but I know of no legal distinction between them."—Kent.

Whether the relation be founded in convenience or on contract, wherever it exists it is regulated by law. Reciprocal rights and duties are prescribed by law. In England this relation is regulated by numberless statutes that are not of force in this State.

The recent amendments to the Constitution not only forbid slavery, but involuntary servitude, except as punishment, and invest with citizenship all persons born or naturalized in the United States, and provide that the right to vote as citizens shall not be

denied or abridged on account of race, color or previous condition.—Revised Statutes, 17, 18; Amendments 13, 14, 15.

Revised Statutes, page 400, Section 9, provides "that all contracts made between owners of land and laborers shall be witnessed by one or more disinterested persons, and, at the request of either party, be duly executed before a Trial Justice, whose duty it shall be to read and explain the same to the parties. Such contract shall clearly set forth the conditions on which the laborer or laborers engage to work, embracing the length of time, the amount of money to be paid and when; and if it be on shares of crop, what portion of the crop or crops."

Section 12, page 491, provides the penalty of violation of such contracts by "failing, willfully and without just cause, to give the labor required by the terms of the contract, or in other respects refuse to comply with the conditions of such contracts," &c. If the offender be the land-owner, the penalty is not less than $50 or more than $500; if it be the laborer, the penalty is *fine or imprisonment*, according to the gravity of the offense.

The Statute of 1712 (Public Laws, 99,) enacts "that all and every part of the common law of England, where the same has not been altered or inconsistent with the particular Constitutions and customs and laws of this province, shall be of force in this province."

In *King* vs. *Huntingdon*, (1 Mills' S. C. Rep., 165,) the Court say: "The Act of 1712 contains rather a privilege than command to adopt the common law, except in its great and leading principles, and in effect we have only adopted it when we thought it reasonable and just."

*Burgess* vs. *Carpenter*, (2 S. C., 9.) Burgess, alleging that Carpenter was his servant, sued for damages done by loss of services, and was nonsuited.

The majority of the Court say: "The relation of master and servant, as it existed in England, was wholly different from employer and employee as it exists in this country."

Mr. Justice Willard concurred in the judgment, but did not think the case "required any expression necessary as to whether the rule (of the English law) is applicable to a case of hiring for wages, nor as to the class of persons properly falling within the designation of servants hired for wages." His assent is put on the ground that the employer in this case "had not an entire interest in the services of the laborer."

The Act of 1865, page 31, did establish and regulate the domestic relations of persons of color. Of that Act, Section 54 gave the master an action against another for enticing away, harboring, or detaining, or beating, or injuring his servant.

This Act was repealed February 12, 1872.—See Revised Statutes, 842. And owners of land and laborers are synonymous with master and servant. If the relation of master and servant exists in this State, the Revised Statutes contain the only regulation on the subject, and contemplate that the contract between them shall be in writing. Formalities of the contract are prescribed—that it shall be witnessed, the Trial Justice read and explain the contract to the parties; such contracts shall clearly set forth the length of time, the amount of money to be paid, and when to be paid,—which cannot attend a mere verbal agreement or contract.

The remedy for violation of such contract cannot be said to be cumulative if there be no other legal remedy.

The word master implies authority, control, command, the right to exact service. Servant implies obedience, subjection to the will of another. Interest in the services of another implies power to exact, to coerce their performance, property in another. A mere contract to perform a service confers no control of the will, no subjection to authority. Its violation is compensated by damages.

To recover damages for enticing away, harboring or injury, there must exist the right of constraint in the one and the duty of submission in the other.

This right does not attach even to the relation of parent and child.

These citations embrace all the law—constitutional, legislative and judicial—of this State applicable to the question under consideration.

If the relation of master and servant does not exist, the nonsuit should have been granted.

If laborers are not servants, and domestics are servants, then a new trial should be granted.

*Thomson,* contra:

1. That the relation of master and servant at common law, with its legal incidents, has long been recognized, and now exists, in South Carolina.—2 Statutes at Large, 413; General Statutes, 767; 10 Statutes at Large, 496, 497; General Statutes, 199, 27.

2. By the common law a servant may be hired either by deed or parol.—Smith's Master and Servant Law Lib., 35; 4 Bacon Ch., 557; Title Master and Servant.

3. That an action lies for enticing away, harboring or, after notice, employing the servant of another.—Smith's Master and Servant Law, 79; *Blake* vs. *Lanyon*, 6 Term. R., 221; *Lawley* vs. *Gye*, 20 Eng. Law and Equity Rep., 168; *Hart* vs. *Aldridge*, Cowper, 56.

4. That the interruption of an actual subsisting service by a third person gives the employer a right of action.—*Keane* vs. *Boycott*, 2 H. Blackstone, 511; *Sykes* vs. *Dixon*, 36 Eng. Com. Law Rep., 244; *Martinez* vs. *Gerber*, 42, 55.

5. Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.—General Statutes, 27, 20.

(*a.*) The headings of titles, chapters and articles of the General Statutes are parts of the law itself.—*People* vs. *Molineaux*, 53 Barb., 9; 1 Hand, 113.

(*b.*) That the Act to protect laborers applies only to persons working for shares of crops.—A. A. 1868–69, 227; Gen. Stat., 490.

6. That the Statute of Laborers is affirmative, and does not change the relation of master and servant at common law.—Dwarris on Statutes, 474, 475.

Sept. 9, 1875. The opinion of the Court was delivered by

MOSES, C. J. This was an action on the case for enticing, persuading and procuring three persons of color, claimed to be the servants of the plaintiff, to leave his employ and engage in that of the defendant. Two of them had been engaged by the plaintiff as farm laborers, and the third, a female, as a domestic and house servant. The verdict of the jury establishes the facts alleged in the complaint, and the exceptions to the judgment are identical with those on which the motion was made in the Court below for a nonsuit. They may be comprised in the three following propositions:

1. That the relation of master and servant does not exist in South Carolina; that the employer cannot maintain an action for enticing, or otherwise persuading, or causing a laborer, and especially an agricultural laborer, to leave his service.

2. That a contract between employer and laborer to be valid must be in writing and attested.

3. That in the event of a violation of the contract by either of the parties to it, the statutes of the State provide the only redress.

The relation of master and servant, as it prevailed in this State before emancipation, was not restricted to that which existed between the owner and the slave. While the rights of the master, as against the slave and all others, acquired by and consequent upon his ownership, were defined and protected by law, another relation was recognized, arising from the employment of one free man by another, known and distinguished as that of master and servant. The statute book is filled with various enactments governing and regulating it, and those which were passed, up to the publication of Brevard's Digest, may be found collected in a separate chapter of his second volume. It cannot be questioned that an action of the character of the one before us, where the party employed was a free person, was maintainable while slavery actually existed in the State. Is there anything in the change, resulting from its abolition,' which can vary either the rights and obligation which attach to such a contract as between the parties themselves, or those qualities and incidents which must affect third persons having knowledge of it? If the relation existed at common law, and has been heretofore acknowledged in this State, is there not a greater necessity for preserving it? Where the service which was exacted through the existence of slavery can no longer be demanded, and the wants and necessities of the community for labor, both domestic and agricultural, can only be supplied by mutual will and agreement, while the liabilities and obligations between the employer and employee rest on and must be regulated by their contracts, the consequences of the loss of service stipulated to be rendered under it should fall upon those who by their intrusion and interference have induced it. If the employer was left alone to resort to his contract for the injury thus sustained, in most instances his reparation would fall far below the actual damage he has suffered.

It is not necessary to refer to authority to show that an action was maintainable at common law for enticing a servant from the service of his master. To sustain it there must be an actual binding contract of service, and where this exists such an interference by a third person as results in its violation will render him liable to the master, not only for his actual loss, but for such further compensation in the way of damages as may be demanded by the character of the circumstances attending the injury through which the

loss was inflicted. It is claimed, however, that if such a relation does exist in this State, it cannot be extended to laborers and must be restricted to domestic servants. We cannot see on what principle such a distinction can rest. From the nature of the service in which the large majority of laborers are engaged in this State, the profit which is to be made from it depends on their employment for the year. The loss of agricultural labor, for even a few days, might often prove of irreparable injury to the crop, and an equal if not greater necessity would seem to exist for extending the rights of the employer which pertain to the relation in which he stands to the domestic servant not only to the farm laborer but the mechanic. The place of the domestic can be more readily supplied, and the loss occasioned by the sudden departure of the farm hand or the mechanic would usually be larger than would follow the absence of the mere employee in house or kitchen work. No such distinction prevails in England. In *Hart* vs. *Aldridge*, (1 Cowp., 54,) it was held that trespass on the case lies for enticing away the servants of the plaintiff who worked for him in the capacity of journeymen shoemakers. Lord Mansfield said: "What is the gist of the action?" That the "defendant had enticed a man away who stood in the relation of servant to the plaintiff, and by whom he was to be benefitted." Ashton, J., said: "Even supposing the servant did live in his own house, if he were employed to furnish a certain number of shoes for a particular person by a fixed time, and a third person enticed him away, I think an action would lie." In *Gunter* vs. *Aston et al.*, (4 J. B. Moore, 12,) the action was sustained in favor of a manufacturer of piano-fortes for enticing his workman from his service. In *Lumley* vs. *Guy*, (20 Eng. Rep., 168,) it was held that the action was maintainable at common law against one who had procured a dramatic *artiste* to break her contract with the plaintiff and depart the service which she was bound to render under it. That the rule of law giving a remedy for enticing away servants is not confined to menial servants, or such as fall within the Statute of Laborers, but extends to all cases where the person is employed to give his exclusive personal service for a given time under the direction of an employer who is injured by the wrongful act.

In our judgment, Section 9 of Chapter CIII of the General Statutes does not require that a contract for service, to be valid and effectual, must be in writing. Either party may require it "to be

duly executed before a Trial Justice;" in which event it must be in writing, for it is to be then "read and explained to the parties." But even if a writing was necessary, it was only for the purpose of allowing either of the parties to avail himself of the remedy allowed to such contracts by the twelfth Section of the same Chapter. Its provisions extend alone to those contracting, and were intended for their protection. The employer was not deprived of any rights he might have against a third person for improperly interfering with those in his service in any way by which it becomes less available or productive to him. But, in any view, the provisions referred to do not take away or impair the power to contract by parol, as it existed at common law, or limit the remedies, for any violation of the contract, to those afforded by the said Sections. There are no negative words which destroy the remedy which existed at common law or restrict it to that provided by the statute. It is only cumulative, and leaves unaffected any remedy to which resort might have been had before its enactment. Although what was said in the opinion of the Court in *Burgess* vs. *Carpenter,* (2 S. C., 7,) may be somewhat in conflict with the views which dispose of the case before us, still the decision there may well be sustained upon the material ground assumed by the Justice who delivered it, and referred to in the separate opinion of Mr. Justice Willard. It was, that Henry Burgess did not occupy the relation of servant to the plaintiff, W. R. Burgess; that he was a co-worker with him in the crop, each contributing the means necessary to its production, liable for the losses and entitled to share the profits, if any accrued. This constituted them partners.

The motion is dismissed.

*Wright,* A. J., and *Willard,* A. J., concurred.