**Effie J. SABBAGHA, Plaintiff,**

v.

**Anthony CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Defendant.**

**No. AC–1096.**

United States District Court
E. D. South Carolina,
Columbia Division.

June 15, 1964.

Jack F. McGuinn, Columbia, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty. for the Eastern District of South Carolina, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Issues joined by the pleadings are now before the Court on cross motions for Summary Judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. Plaintiff seeks reversal of previous findings by the Secretary of Health, Education and Welfare; Defendant seeks affirmation of these findings which denied the relief Plaintiff seeks by her complaint.

This action is brought under section 205 of the Social Security Act as amended (hereinafter referred to as "the Act"), 42 U.S.C.A. § 405, to review a final decision of the Secretary of Health, Education and Welfare. Section 205(g) of the Act, 42 U.S.C.A. § 405(g), provides, *inter alia*, that "As part of its answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and the decision complained of are based," and that "The court shall have power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "The findings of the Secretary as to any fact, if sup-

ported by substantial evidence, shall be conclusive \* \* \*." Section 205(h), 42 U.S.C.A. § 405(h), expressly restricts the judicial remedy to the manner in which judicial review is permitted by section 205(g), and contains a prohibition against any action under the general jurisdiction of the Federal district courts for a money judgment.[1]

The proceedings leading to this request for judicial review are as follows. On January 22, 1962, Effie J. Sabbagha, the plaintiff herein, filed application with the appropriate division of the Social Security Administration for old-age insurance benefits. This claim was disallowed because it was determined that she lacked the necessary insured status and she was so notified on May 22, 1962. Upon reconsideration of her claim after a request by her, the Administration affirmed its original denial action. She then requested and was granted a hearing before a hearing examiner of the Bureau of Hearings and Appeals at which time she, her son, and her attorney appeared and were heard. The hearing examiner found in his decision issued on November 30, 1962 that a legal employer-employee relationship did not exist between plaintiff and her son, that amounts received from him under the color of wages were not taxable for social security purposes and consequently could not be considered in determining the total number of quarters of coverage earned by her. The hearing examiner held that she was not a fully insured individual within the meaning of the Act and therefore not entitled to old-age insurance benefits. The hearing examiner's determination became the final decision of the Secretary when, on January 23, 1963, the Appeals Council declined to review. Having thus exhausted all administrative remedies,

the plaintiff commenced this action for judicial review on March 22, 1963.

The only issue before this court is whether there is substantial evidence in the record to support the decision of the Secretary that a valid employer-employee relationship did not exist between plaintiff and her son, that she was not an "employee" for social security purposes and thus did not earn the requisite quarters of coverage to entitle her to benefits. The basic evidentiary facts are as follows: Philip Sabbagha, the son of the plaintiff herein, is licensed by the State of South Carolina to and does operate a house and apartment rental agency known as the Philip Rental Agency in Columbia, South Carolina. He is not licensed, nor does he operate as, a real estate agent or broker, nor does he act as a rental agent for anyone other than himself. He owns a number of buildings containing low-rental units located in various sections of Columbia. He acquired his first unit in 1948 or thereabouts and gradually obtained additional units until at one time he had nearly fifty. His holdings have decreased to where he now has thirty-seven or thirty-eight units and he devotes his full working time to their rental, maintenance, and repair, and from the rentals of these units earns his livelihood.

Prior to 1961 he owned a building in the 700 block of Main Street in Columbia and had his office located therein and the "Philip Rental Agency" was listed in the telephone directory at that address. Since 1961 he has maintained his office in his home where he lives with his mother, the plaintiff in this case. The "Philip Rental Agency" is not now listed in the telephone directory and any advertising is either done through newspapers or by placing a "For Rent" sign

---

1. In her prayer for relief the plaintiff asks, among other things, that the court order she be entitled to benefits and grant to her back payments to the time of her application. This the court cannot do because of the exclusive remedies provided for in section 205(g) and the prohibition against money judgments in section 205 (h). One reason for this limitation is that

while an individual might be entitled to benefits at the time of filing his application, his right to receive benefits subsequently might be terminated, or be subject to suspension or deduction, under various provisions of the Act, e.g., sections 202 & 203, 42 U.S.C.A. §§ 402 & 403.

where an apartment may be vacant, with the telephone number of Mr. Sabbagha's home shown as the number to call. Mrs. Sabbagha has lived in the home of her son since 1955 and for the years 1956 through 1960 he claimed her as his dependent for Federal income tax purposes. Although she speaks English fairly well, she can neither read nor write with any facility. She is unable to write her full name; is able to write her first name only. Her only experience in the labor market was as a cashier for a few months in 1946. She alleges that in 1961 her son Philip began paying her $35 weekly for assisting him in some of the clerical details of his rental agency such as answering the telephone, accepting rental payments and giving receipts, paying bills, employing repairmen and making appointments and showing vacant apartments. In 1963 her weekly wages were reduced to $25, she alleges, due to illness.

It is the contention of the plaintiff that this alleged work activity by her for her son created a bona fide employer-employee relationship and as a result, she argues, she has earned at least the required quarters of coverage and is entitled to old-age insurance benefits.

The relevant provisions of the Act are set forth below. Section 202, 42 U.S. C.A. § 402, provides for old-age insurance benefits to:

"Sec. 202.  (a) Every individual who—

"(1) is a fully insured individual (as defined in section 214(a),

"(2) has attained age 62, and

"(3) has filed application for old-age insurance benefits * * *

"shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits * * *."

To be the "fully insured individual" called for by section 202(a) (1), the plaintiff would have had to have acquired six quarters of coverage. Section 214(a) (1), 42 U.S.C.A. § 414(a) (1). A "quar-ter of coverage" is defined by sections 213(a) (2), 42 U.S.C.A. § 413(a) (2), as a quarter (a period of three calendar months ending on March 31, June 30, September 30, or December 31) "in which the individual has been paid $50 or more in wages."

The term "wages" is defined in section 209, 42 U.S.C.A. § 409, in terms of remuneration paid for "employment" which in turn is defined, so far as is pertinent here, by section 210(a), 42 U.S.C.A. § 410(a):

" * * * any service, of whatever nature, performed after 1950 * * * by an employee for the person employing him * * * except that, in the case of service performed after 1950, such term shall not include—

* * * * *

"(B) Service not in the course of the employer's trade or business, or domestic service in a private home of the employer, performed by an individual in the employ of his son or daughter;"

As shown in the Notice of Hearing, the sole issue of fact upon which findings were to be made was whether or not the plaintiff was an employee under the terms of the Social Security Act, as amended, which includes the usual common law rules applicable in determining whether an employer-employee relationship existed.

The term "employment" is defined in the Social Security Act (Section 210(a), 42 U.S.C.A. § 410(a):

" * * * [A]ny service, of whatever nature, performed after 1950 * * * by an employee for the person employing him * * * except that, in the case of service performed after 1950, such term shall not include—" *inter alia* (Parent working for son)

Prior to 1961 services performed by a parent for her son was conclusively presumed not to be "employment". The 1960 amendment to the Act (Public Law 86–778, 86th Congress, Section 210(a))

(3) (B) modified this exclusion so as to permit a parent to work for her son.

The term "employee" is defined in Section 210(k) of the Act, 42 U.S.C.A. § 410 (k) as:

" * * * [A]ny individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

Volume 81, Corpus Juris Secundum, page 15, "Social Security and Public Welfare", Section 5 states: "The Social Security Act and the related taxing statutes do not define the terms 'employer,' or 'employee,' but the term 'employment' is defined in the statutes as 'any service, of whatever nature, performed within the United States by an employee for his employer,' and such term should be interpreted in favor of the employment relationship in doubtful cases, because of the remedial nature of the statutory objectives." Citing in support Henry Broderick, Inc. v. Squire, CCA Wash., 163 F.2d 980—Anglim v. Empire Star Mines Company, CCA Cal., 129 F.2d 914—Hearst Publications v. United States, D.C.Cal. 70 F.Supp. 666, affirmed CCA 168 F.2d 751.

The next paragraph of this section goes on to state: "It is generally agreed, however, that the common-law test is the basis of determining an employer-employee relationship * * *," citing in support nine cases. The section then goes on to refer the matter to the title of "Master and Servant" preserved in sections 1–3(9), Corpus Juris Secundum, which are contained in Volume 56 beginning at page 24. Section 1a provides: "The relation of master and servant is that which arises out of an express or implied contract of employment between a master or employer on the one hand and a servant or employee on the other." Section (b) provides: "Generally speaking a 'servant' or 'employee' is a person who renders service to another, usually for wages, salary, or other financial consideration, and who in the performance of such service is entirely subject to the direction and control of the other, such

other being respectively the 'master' or 'employer'." Sub-section (c) provides: "The terms 'servant' and 'employee' are generally held to be synonymous; they have also been compared with, and distinguished from, 'laborer' and other terms."

At page 29 (same authority) in Section 2, Sub-section (a), the essentials of the relation are defined as: "Although various elements may tend to indicate the existence of a master and servant relation, no one fact or circumstance is necessarily conclusive; ordinarily the question is one of fact to be determined from all the circumstances of the case." Sub-section (b) provides: "The relation of master and servant arises out of contract, the assent of both parties being essential." Sub-section (c) provides: "Any person not under a legal disability is capable of becoming either a master or servant; a person may dispose of his own labor as he wishes provided he does not violate a contract or statute, and an employer has the right freely to contract and to select his employees in the absence of statutory inhibitions." It will be noticed here, the statutory inhibition was removed by Congress effective January, 1961. Sub-section (d) provides: "The essential characteristic of the master and servant relation is the retention by the employer of the right to direct and control the manner in which the work shall be performed, the right to determine, not merely the result but the methods and means by which such result is to be accomplished." Citing in support several hundred cases. Sub-section (e) provides: "The fact of compensation and the manner of paying it are factors to be considered in determining whether a master and servant relationship exists, but such considerations are not conclusive." Sub-section (f) provides: "The foundation of the master and servant relationship is service rendered by the servant to the master; some continuity of such service is essential, but it need not be uninterrupted or permanent."

Sub-section 3 beginning at page 41, Corpus Juris Secundum, "Master and

Servant", distinguishes in Sub-section 1, independent contractors and their employees; in Sub-section 2, tests of independent contractor relationship. Section 3, Sub-section 3 states: "The right to control the mode of doing the work is the principal consideration in determining whether one employed is a servant or an independent contractor." Again several hundred cases are cited in support of the text. Sub-section 4 treats of supervision. Sub-section 5 states: "The power to terminate the relationship at will is an important, but not decisive, factor in determining whether the relationship is that of master-servant or of contractee-independent contractor." The remaining Sub-sections of Section 3 go on to further distinguish the differences between an independent contractor and a master-servant relationship, which is not germane here.

Section 5 of "Social Security and Public Welfare", Volume 81, Corpus Juris Secundum, provides in part at page 18, that in determining whether individuals engaged in certain transactions were employees within the statutes, the court is guided by the law of the state where the transaction occurred, citing cases in support.

In a late South Carolina case, the Supreme Court held: "Generally, not actual control but right to control particular work in manner or means of its accomplishment establishes relationship of master and servant." Bates v. Legette, 239 S.C. 25, 121 S.E.2d 289, quoting 56 Corpus Juris Secundum, "Master and Servant", Section 3, Sub-section (1): "The relation of master and servant exists in this State as at common law." Daniel v. Swearengen, 6 S.C. 297, 24 Am. Rep. 471. The South Carolina Supreme Court in a 1950 case: Gomillion v. Forsythe, 218 S.C. 211, 62 S.E.2d 297, 53 A.L.R.2d 169, seems to adopt the comprehensive view and collected statements appearing in 56 Corpus Juris Secundum: "Master and Servant", Sub-section 3(1), page 41: In setting the yard stick to be the matter of control. Other South Carolina cases refer to Words and Phrases.

Volume 14, Words and Phrases, pages 524 to 540, defines the term "employee" as follows: "A hired person who is subject to control of hirer as to means, method and details of performance is 'employee' for social security tax purposes." Citing in support Shreveport Laundries v. United States, D.C.La., 84 F.Supp. 435.

Words and Phrases, Volume 14A, pages 4 through 21, states that an employer is one who uses or engages the service of another for pay. Arlandson v. Humphrey, 224 Minn. 49, 27 N.W.2d 819.

In 35 Am.Jur. "Master and Servant" Section 3, treating the matter generally, Sub-section 3, it is stated that in common law four elements were necessary as follows: (1) Selection of servant; (2) Payment of wages; (3) power of dismissal and (4) power of control, which is the really essential element. This is further defined as the right to direct the manner in which the work is to be done, not only of the employment, but its details, citing in support abundant authority. Furthermore various definitions are given in Black's, Ballentine's, Bouvier's and other law dictionaries.

In the cases collected under 42 U.S. C.A. we find: "Generally, an essential characteristic of the 'employer and employee relationship' is that employer retains right to control and direct individual performing services, as to both result and details and means by which result is accomplished." Carroll v. Social Security Board, CCA Ill. 1942, 128 F.2d 876. "The usual common law rules must be applied." Millards', Inc. v. United States, D.C.D.N.J.1956, 146 F.Supp. 385.

The following facts and findings taken from the record and from the report of the hearing examiner are almost undisputed:

(1) Philip C. Sabbagha conducts an apartment rental business doing business as the "Philip Rental Agency" with an office at 336 Etiwan Avenue, Columbia, S. C.

(2) She (plaintiff) has worked for her son for the past three years.

(3) Her duties consisted of: (1) answering the telephone; (2) taking messages; (3) making appointments; (4) renting apartments; (5) receiving money and giving receipts for rental payments; (6) making arrangements for apartment inspection and (7) taking notice of other minor details of his business.

(4) That her son was a licensed realtor.

(5) That although his rental business consumed most of his time, he arranged for the sale of property for other persons as the occasion arose.

(6) That it was necessary for the employer to have assistance.

(7) That the plaintiff was paid the sum of $35.00 per week.

(8) That the taxes, both federal and social security had been paid.

(9) That the employer instructed the plaintiff in her various duties.

(10) That he could fire her at will.

(11) That on the record in the case were filed various questionnaire forms and statements:

a. That her social security number is 251–40–3561, and she had applied for benefits under the Act on January 22, 1962.

b. That she had been employed for four years.

c. That her earnings last year (1961) were $1,820.00 and taxes had been paid thereon.

d. That she answered the telephone for ads running in the newspapers.

e. That she handled trouble calls.

f. That she received money from tenants.

g. That she showed apartments.

h. That she gave out invoices and bills to clients, paid bills, employed repairmen, and did all things necessary as a clerk and assistant.

i. That she worked six days per week, five to eight hours as necessary.

j. That she was instructed in her work by him.

k. He had power to fire her.

l. That she was paid wages and still is.

m. That she did not help him pay for domestic help.

n. That there were available checks and returns to corroborate.

o. That the employer had filed social security returns.

p. That her first full time employment was January 1961, but she had worked part time prior to that time.

q. That in 1946 she had been employed as cashier which was reflected on her social security record.

r. That she was under the complete control and direction in both her employment and the detail of her work, both as to result and in manner of accomplishment.

s. That if her services were lost it would be necessary to employ another person.

t. That the volume of work had grown in over ten years so as to require more than one person to handle same.

It is worthy of note that in the cases collected under 42 U.S.C.A., dealing with the Social Security Act, and the specific question of employer-employee relationships, it is stated: "There is no policy of the law which prohibits a person from employing another to perform even entirely useless services for the sole purpose of making the employee eligible for social security under this chapter." Willard v. Hobby, D.C.Pa.1955, 134 F.Supp. 66. Entry by father into business with son solely to enable father to qualify in social security is permissible. Chipman v. Ribicoff, D.C.Fla.1961, 196 F.Supp. 94; Wray v. Folsom, D.C.Ark.1958, 166 F. Supp. 390.

■■ There is nothing improper or questionable about the person entering into bona fide employment for the express purpose of acquiring benefits. Brannon v. Ribicoff, D.C.Mont.1961, 200 F.Supp. 697. The law should not be construed narrowly, but loosely in favor of claimants. See Folsom v. Poteet, C.A. Cal.1956, 235 F.2d 937.

█ As stated by Chief Judge Simon E. Sobeloff in Thomas v. Celebrezze, (4th Circuit decided April 15, 1964), 331 F.2d 541 "The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: ' * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197 [59 S.Ct. 206, 83 L.Ed. 126], (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 471 [474], [71 S.Ct. 456, 95 L.Ed. 456], (1951); Boyd v. Folson, 257 F.2d 778 (3d Cir. 1958); * * * ".

█ This court finds that the hearing examiner's conclusions are not supported by substantial evidence, but are contrary to and in conflict with the substantial evidence in this case. Hence, it is

Ordered and adjudged, that the decision of the Secretary be, and it hereby is reversed; and it is further

Ordered and adjudged, that the claimant, Effie J. Sabbagha, be adjudged entitled to benefits under and by virtue of the provisions of sections 202 and 205, and related sections, of the Social Security Act as amended (42 U.S.C.A. §§ 402, 405), together with payment of benefits for such retroactive periods as are by statute allowed.