15424

## TUCKER v. HOLLY HILL LUMBER COMPANY

(20 S. E. (2d), 704)

260

February, 1942.

*Mr. Blease Ellison* and *Mr. D. McK. Winter*, both of Columbia, Counsel for Appellant,

*Mr. T. B. Bryant, Jr.,* of Orangeburg, and *Mr. C. T. Graydon,* of Columbia, Counsel for Respondent,

June 9, 1942.

The Opinion of the Court was delivered by CIRCUIT JUDGE PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE:

On June 7, 1940, James Tucker was employed as a laborer by the Holly Hill Lumber Company. The work he was engaged in was clearing a right-of-way for a bridge across the Wateree River, and in order to get to his work it was necessary for him and his other fellow servants to cross the river. For this purpose the Holly Hill Lumber Company provided a boat. James Tucker and four other employees got in the boat for the purpose of crossing the river, and while in the act of crossing the stream was drowned.

On April 5, 1941, Rebecca Tucker, the mother of James Tucker, was duly appointed administratrix of the estate of James Tucker, and on January 31, 1941, commenced an action for her own benefit against the Holly Hill Lumber Company for damages, because of the wrongful death of her said son.

On trial before Judge Wm. H. Grimball, February term, 1942, Court of Common Pleas for Richland County, a non-suit was granted at the close of the plaintiff's case. From said order of nonsuit this case is now before the Supreme Court.

The complaint alleges that appellant's intestate was employed by respondent as a laborer; that he was instructed by his foreman to get in a boat to be carried across Wateree River; that the boat was small and not built to accommodate over three people; that the foreman placed five grown men in said boat, thereby overloading same and rendering passage across the river dangerous; that in its passage across the river the boat dipped water and sank, thereby causing appellant's intestate to be drowned; that the death by drowning of said intestate was due to the negligent, willful, wanton and high-handed acts of respondent in failing and neglecting to provide a safe instrument or boat with which to cross the river, it being necessary to cross the river in order to do the work for the company.

In support of the allegations of the complaint, testimony was offered to the following effect: That James Tucker, the deceased, was drowned on Friday, June 7, 1940; that he had not worked that week but came on Friday morning. The workmen went down to the river in a truck provided by the company; the regular boss, Mr. Tom Tolar, was not there, and in his absence Mr. Joe Kinsey was boss. The workmen crossed the river in a boat furnished by the company; they started using that boat on Monday morning before Tucker was drowned on Friday. At first they carried three over in the boat, but when Tucker was drowned they were carrying five. James Tucker did not know how to swim. When the men started to get in the boat no one gave any instructions or warning of any kind about the boat; Mr. Kinsey, the boss, said the boat ought to hold five. When the boat sank James Tucker fell out of it and was drowned. The work that Tucker was engaged to do was across the Wateree

River and the company transported the workmen to their work. The river was very full and the boat could not be paddled straight across the river; it was necessary to go up on one side of the river and let it drift with the stream across to the other side.

The learned trial Judge granted a nonsuit on two grounds, namely: Assumption of risk, and second, simple tool doctrine. On the trial of the case the trial Judge refused to allow Section 481, 46 U. S. C. A. to be introduced in evidence.

Three questions are presented by this appeal. First: Was Section 481, Volume 46, United States Code Annotated, admissible in evidence? Second: Was it error to grant a nonsuit on the ground of the simple tool doctrine? Third: Was it error to grant a nonsuit on the ground of assumption of risk?

■ Section 481, 46 U. S. C. A., is in no sense applicable to the ordinary boats used upon our rivers. It was not so intended and cannot with good reason be applied.

This exception is overruled.

■ The so-called "simple tool" rule is based on the idea that ordinarily the employee has better opportunity than the employer to observe defects and guard himself against them, and that the employer should not be charged with the duty of the care or safety of an employee with respect to a matter in which the employee is in the better position to care for himself. 35 American Jurisprudence, page 607.

Generally and in most cases where the "simple tool" doctrine has been invoked, the instrument in question was a simple tool being used at the time in the performance of the labor in which the servant was engaged. Black's Law Dictionary defines a tool as "an instrument of manual operation."

In *Vanderpool v. Partridge*, 79 Neb., 165, 112 N. W., 318, 13 L. R. A. (N. S.), 668, numerous annotations are

given, and in practically every one the instrumentality was in reality a simple tool, such as hammers, chisels, crowbars, wrenches, etc.

39 Corpus Juris, 762, designates axes, blocks and tackles, chisels, clamps, crowbars, rods, ladders, paint brushes, rail cutters, shovels, spike mauls, spikes, sticks with which windows are held open, tie picks, T-nails, and wagon seat springs as simple tools.

Can the "simple tool" rule be enlarged so as to embrace a boat used for transporting laborers across a river?

It is common knowledge among the users of ordinary river boats such as was used on the occasion of the drowning of plaintiff's intestate that such boats may become very dangerous when overloaded. Under such conditions they dip water very easily and often capsize, especially where the river is in flood. The boat used when plaintiff's intestate was drowned had been in use for a few days only, and on the occasion of the drowning of Tucker there were five men in the boat. On a previous trip with five men in this boat the water came within three inches of the top of the boat.

While a boat of this kind is very simple in appearance, its use at times becomes hazardous, especially so if overloaded or improperly rowed in a swift current. The evidence is that the boat dipped soon after leaving the bank. For some reason the boat on its fatal passage across the river did not prove a safe means of transportation.

Under all of the facts and circumstances of this case and the law applicable thereto, it was error to grant a nonsuit on the ground that the boat was a "simple tool." Whether the boat as used was a "simple tool" or a dangerous instrumentality was a question for the jury to pass upon.

The remaining question to be considered is whether the trial Judge erred in granting a nonsuit on the ground of assumption of risk on the part of plaintiff's intestate.

The rules of law regulating the obligation between master and servant is that the master is bound to use reasonable care and diligence to prevent accident and injury to those in his employ. The master must exercise such ordinary and reasonable care and precaution for the safety of his servant as the nature and dangers of the business admit of and demand. As between master and servant negligence should be measured by the character and risk of the work engaged in.

It is the positive duty of the master to furnish the servant with reasonably safe instrumentalities wherewith and places wherein to do his work, and in the performance of these obligations imposed by law upon the master, the servant may assume that the master has performed such duties. This duty is a primary non-assignable duty of the master, and evidence of failure of the master to provide a reasonably safe instrumentality with which to work or place wherein to work, makes out a *prima facie* case of negligence, and any excuse for the failure is a matter of defense.

The general rule is that a servant assumes the risks ordinarily incident to his employment, but not those due to the master's negligence. *Lewis v. Gallivan Building Company,* 87 S. C., 210, 213, 69 S. E., 212.

The basis for denying the right of recovery to an employee who has sustained an injury under the doctrine of assumption of risk is knowledge or notice of the danger on the part of the person injured. If at the time of the injury he had no knowledge or notice of the danger to which he was subjected, he is entitled to be compensated by his employer. *Williams v. Charleston & W. C. Railway Co.,* 121 S. C., 23, 113 S. E., 300.

Where the master's fault is the cause of the injury to his servant, he is *prima facie* liable, and if he would relieve himself of the consequences on the ground that the servant assumed the risk he must show not

only that the servant knew the danger, or that it was so obvious that he should have known it, but also that he comprehended or appreciated it. *Barnhill v. Cherokee Falls Mfg. Co.,* 112 S. C., 541, 100 S. E., 151.

There is testimony to the effect that plaintiff's intestate was using the boat that was provided for his transportation across the river for the first time; that the boat was heavily loaded; that the deceased was merely a passenger in the boat and had no duty to perform in the crossing; that he was not familiar with the boat and did not know its carrying capacity; that the boat was inadequate for transporting five grown men safely across the river.

Clearly, it was the master's duty to provide a reasonably safe means of transportation for plaintiff's intestate. It cannot be said under the facts in this case and the law applicable thereto that the respondent was guilty of no negligence at all or that plaintiff's intestate was subjected to merely normal dangers of his employment. Neither can it be said that plaintiff's intestate was cognizant of the incapacity of the boat and appreciated the danger confronting him in the means of transportation furnished him.

The Circuit Judge should not have granted the defendant's motion for a nonsuit.

Reversed and remanded for a new trial.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.