John MIHALCHAK, Appellant,

v.

AMERICAN DREDGING COMPANY.

No. 12794.

United States Court of Appeals Third Circuit.

Argued March 20, 1959.

Decided May 12, 1959.

Rehearing Denied July 2, 1959.

Abraham E. Freedman, Philadelphia, Pa. (Wilfred R. Lorry, Marvin I. Barish, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

T. E. Byrne, Jr., Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN and HASTIE, Circuit Judges and MORRILL, District Judge.

McLAUGHLIN, Circuit Judge.

John Mihalchak was employed as a deckhand by American Dredging Company on one of its scows. The scow was engaged in carrying material dredged from the Delaware River downstream to the assigned dumping places. The scow was moved to and fro between the dredge and dumping grounds by a tug. It was one of Mihalchak's duties on signal from the tug captain to open the doors forming the bottoms of the scow's five or six transverse compartments, thereby dumping the mud.

The mechanical arrangement for controlling the bottom-door of each compartment consisted of two chains attached to the end of the door, one forward and one aft. Each chain was carried up from the bottom of the well to a block fastened to the top of the bulkhead which formed the separation between that compartment and the next. The block furnished a fairlead for the chain which was carried thence outboard to the edge of the compartment. Here it was wrapped around and fastened to a shaft extending fore and aft along one side of the scow, parallel to and mounted on the deck. By rotating the shaft so as to take in the chains, the door was closed. It was held closed by horizontally pivoting a dog, consisting of an appropriately shaped heavy steel bar extending upward at an acute angle from its mounting on the deck, sideways into and between two of the teeth of a gear concentrically mounted on the shaft. To open the doors it was necessary to knock the dog free from between the teeth with blows from a sledge hammer. The shaft then rotated freely, permitting the chain to run out while the weight piled on the doors opened them.

On the night of May 22, 1956 at about 11:00 P.M. a tug with Mihalchak's loaded scow in tow approached the dumping area. Mihalchak crossed from the tug to the scow where he knocked out the dog securing the door on the first compartment. He moved on to the second compartment and while he was cleaning away the mud and gravel in the vicinity of the dog and gear, in some way the dog was released. Apparently his hand was in the restricted space normally occupied by the dog when it was free. Consequently his hand was caught between the bulkhead and the dog, tending to force the dog back against the rapidly rotating gear which would promptly smash it back again against his hand; consequently the hand was badly injured.

Plaintiff appeals from the denial of his motion for a directed verdict at the close

of evidence and its renewal after the jury verdict in favor of defendant, and from the refusal by the trial court to set aside the verdict and to order a new trial.[1]

■ This action was brought at law under the Jones Act, 41 Stat. 1007 (1920), as amended, 46 U.S.C.A. § 688. At trial plaintiff sought to make his case for recovery under common-law negligence as modified by the Jones Act and on establishing the dog and gear arrangement as unseaworthy. From the form of the pleadings he had, on both of these issues, the risk of non persuasion—the persuasion burden—and the accompanying initial risk of non-production of evidence or the production burden.[2] The question raised by plaintiff's motion for a directed verdict, then, is whether he had so well succeeded in carrying his burden of producing evidence that he was entitled to a verdict in his favor as a matter of law.

■ The propriety of directing a verdict in appropriate situations in favor of the party imposed initially with the risk of non-production of evidence seems to be well settled.[3] Yet though a motion for directed verdict in favor of the proponent of an issue is cast in the same form as when made by the defending party, it requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding. The ultimate conclusion that there

is no genuine issue of fact[4] depends not on a failure to prove at least enough so that the controverted fact can be inferred, but rather depends on making impossible any other equally strong inferences once the fact in issue is at least inferable.

In this case it is undoubted that there was evidence which would have been sufficient to support a finding that the plaintiff's injury was caused by the defendant's negligence or by the unseaworthiness of the scow's fittings or by both negligence and unseaworthiness. The question becomes then whether there was any evidence to support contrary inferences. There was evidence that the teeth of the gear and the side of the dog which fitted first between the teeth were chipped. From this it could be inferred that it would be possible for the dog to slip out of the gear and that it was hence not seaworthy.[5] There was in fact testimony of instances on some of the other scows operated by the same company where similarly chipped teeth and dogs had actually slipped, but even as to that testimony the possibility was not foreclosed that the release of those gears was occasioned by original improper securing of the dog. Nor was that testimony explicit as to whether the slipping had occurred when the doors were first being closed or during the loading of the scow or while it was traveling to the dumping ground. It could be inferred that once the door had been held closed during the loading, when it would have been imposed with shocks and strains from material being deposited in the scow, and during a trip while loaded, it would not suddenly open of its own accord.[6]

1. See Rule 50, Fed.Rules Civ.Proc. 28 U.S.C.

2. 9 Wigmore, Evidence §§ 2485, 2487 (3d ed. 1940). See also McNaughton, Burden of Production of Evidence, 68 Harv.L. R. 1382 (1955).

3. See e. g., 53 Am.Jur., Trials §§ 385, 386; 9 Wigmore, Evidence § 2495 (3d ed. 1940); 5 Moore's Federal Practice, ¶ 50.02(1).

4. 6 Moore's Federal Practice, ¶ 59.04(5).

5. For a discussion of the meaning of "seaworthiness" in personal injury cases see Mesle v. Kea S.S. Corp., 3 Cir., 1958, 260 F.2d 747, 750.

6. For annotations on disregarding evidence which is contrary to laws of nature or physical facts see 8 A.L.R. 796 and 21 A.L.R. 141.

There was testimony also that the dogs were sometimes wedged into place with pieces of wood or stone; inferably such fastening could prevent release of a gear into which, for some reason, the dog had not been fully inserted or from which the dog might slip. But there was no testimony that the dog involved in the accident had been wedged at all. The plaintiff did speak of clearing out wood as well as mud and stone, but there was nothing to indicate that either stone or wood was wedging the dog in closed position. Nor was there any evidence to indicate that after the occurrence of the accident the scow was operated with the use of a wedge against the dog. From all this it could not be inferred that the only possible explanation for the accident was that the chipped teeth and dog involved did not hold or that they did not hold because they were unseaworthy.

If all this were not enough, there is the additional problem of the degree to which plaintiff's evidence is to be accepted. Most of his case rested on his own testimony, while the defendant put in no evidence at all on the issue of how the accident happened. In passing on a motion for directed verdict all evidence and inferences most favorable to the party against whom the motion is made must be indulged. Always when the motion is made by the proponent there is a problem of the credibility to be attached to his evidence, for if it is disbelieved in important degree his motion must fail.[7] And yet there must be some reason other than caprice for disregarding the proponent's evidence to any significant extent.[8]

■ Here adequate reason for leaving questions of credibility to the jury lay in the facts that the chief witness had an obvious interest in the case, that the testimony as to how the accident occurred was not very explicit, and that a considerable measure of improbability prevented the conclusion that the dog simply had slipped out of the gear. We conclude, therefore, that the trial judge correctly refused to direct a verdict for the plaintiff.

■■ Plaintiff's appeal from the denial of his motion for a new trial presents the question of whether the weight of the evidence was clearly in his favor.[9] Such a motion is said to be entrusted to the trial judge's discretion because the process of weighing the evidence involves hearing the testimony and seeing the witnesses. Only in very clear cases can the evidence be weighed with enough accuracy by an appellate court to justify it in saying that the trial judge abused his discretion in either granting [10] or refusing [11] the new trial. This is not such a case.

The judgment of the district court will be affirmed.

---

7. For a discussion of the problems in directing a verdict on uncontradicted but interested testimony see annotations at 72 A.L.R. 27 and 62 A.L.R.2d 1191.

8. Chesapeake & Ohio R. Co. v. Martin, 1931, 283 U.S. 209, 51 S.Ct. 453, 75 L. Ed. 983.

9. See Magee v. General Motors Corp., 3 Cir., 1954, 213 F.2d 899.

10. See Zegan v. Central R. R. Co. of N.J., 3 Cir., 1959, 266 F.2d 101.

11. See Grobel v. Miller, 3 Cir., 1934, 71 F.2d 503, 506.