17822

F. Oliver BATES, Respondent, v. Stacy J. LEGETTE and Veterans
Taxi Service, Appellants, and Banks Construction
Company, Respondent
(121 S. E. (2d) 289)

*Messrs. Hope & Cabaniss* and *Paul N. Uricchio, Jr.,* of Charleston, *for Appellant, Stacy J. Legette,*

*Messrs. Moore & Mouzon,* of Charleston, *for Appellant, Veterans Taxi Service,*

*Messrs. Stoney & Stoney* and *Figg, Gibbs & Grimball,* of Charleston, *for Respondent, F. Oliver Bates,*

*Messrs. Barnwell, Whaley, Stevenson & Patterson,* of Charleston, *for Respondent, Banks Construction Company,*

August 14, 1961.

LEWIS, Justice.

This appeal arises out of an action by the respondent, F. Oliver Bates (hereafter referred to as Bates), to recover for

injuries and damages sustained in a collision between his automobile, driven by him, and a taxicab owned and driven by the appellant, Stacy J. Legette (hereafter referred to as Legette). Bates brought the action against the appellants, Legette and Veterans Taxi Service, Inc. (the latter hereafter referred to as Veterans), and the respondent, Banks Construction Company, Inc. (hereafter referred to as Banks), alleging that his injury and damage was caused by their joint and concurrent negligent and reckless acts in that (1) Legette, while operating his taxicab at an excessive rate of speed, as the agent of Veterans, drove it across the center line of the highway immediately into the path of the automobile of Bates, and (2) Banks, having the highway upon which the collision took place under his control for construction and repair pursuant to a contract with the State Highway Department, failed to erect proper warnings and maintain proper safety precautions for the protection of the travelling public, as it was required to do.

Legette, Veterans and Banks filed separate answers to the complaint, in all of which general denials were entered and pleas of contributory negligence and recklessness interposed. Additionally, Legette brought a counterclaim against Bates and a cross action against Banks to recover damages sustained by him in the collision; the counterclaim against Bates based upon his alleged negligence and recklessness in the operation of his automobile, and the cross action against Banks based upon its alleged negligence and recklessness in failing to maintain signs or flagmen for the protection of the public travelling over the highway.

During the trial of the case Legette, Veterans and Banks, each, made timely motions for a nonsuit and directed verdict, all of which were denied, except that of Banks for a directed verdict in its favor, which was granted. The jury returned a verdict for Bates against Legette and Veterans for both actual and punitive damages. Their subsequent motions for judgment in their favor notwithstanding the verdict or,

in the alternative, for a new trial were denied, and they have appealed from the order denying such motions.

The appellants charge error on the part of the trial Court (1) in refusing to grant their motions for a directed verdict, (2) in refusing to grant Legette's motion for a new trial, and (3) in directing a verdict in favor of the respondent Banks. They have filed separate exceptions and the appeal of Legette will be considered first. The exceptions by Legette, that the Court erred in refusing his motion for a directed verdict and in directing a verdict for the respondent Banks, may be considered together, as both involve a review of rulings by the trial Court relative to the presence or absence of testimony to sustain the allegations of negligence and recklessness on the part of Legette and Banks, and contributory negligence and recklessness on the part of Bates.

The collision, out of which this action arose, occurred about 9:30 A. M., on Saturday, August 2, 1958, on U. S. Highway No. 17, approximately four-tenths of a mile east of the Cooper River Bridge, the highway at that point running in an east-west direction. At the time, Banks was improving a 2.4 mile section of the highway pursuant to a contract with the State Highway Department. The collision occurred on the section of highway under construction.

The improvement to the highway consisted of the widening of the then existing 22 foot concrete roadway to a 70 foot asphalt surfaced roadway with concrete curbs and gutters. At the time of the collision construction had reached the stage where the curbing had been completed and asphalt placed on the widened areas, with the asphalt in some areas extending from curb to curb. In other areas the asphalt had been placed on the widened areas but not over the old roadway, leaving it exposed. Where the collision occurred the old roadway was exposed for a distance of approximately 500 feet. While the asphalt had been put in place on the widened areas, there is testimony that it was rough and travel per-

mitted over it only to aid in packing the roadbed. Traffic was maintained over the highway during construction and the old roadway was kept open for its use. .

On the morning of August 2, 1958 Bates was proceeding in a westerly direction toward Charleston, travelling on the old roadway of U. S. Highway No. 17 through the section under construction. At the time Legette was proceeding in an easterly direction, also travelling on the old roadway. Both were adhering to the old roadway through the area under construction and were travelling through the aforesaid 500 foot section, where the center line of the old roadway was clearly marked by a white line with solid parallel yellow lines on each side of the white line, with signs in place warning drivers approaching from either direction that there must be "No passing when yellow line is in your lane". When Bates had travelled over this 500 foot section a distance of approximately 200 feet and Legette a distance of approximately 300 feet, each on his right side of the marked center line, according to their respective versions, they collided head-on on Bates' right of the white and yellow lines. Legette says that he turned to his left of the center line of the old roadway to avoid Bates who was on his (Legette's) side of the road and the collision occurred when Bates suddenly cut back in front of him. Bates, however, says that he was at all times to his right of the center line of the old roadway and Legette for no reason drove to his left of the center thereof when the collision occurred. There was some testimony of excessive speed on the part of both.

In widening the highway through the area, the old roadway did not follow the center of the new construction due to the effort to eliminate some of the existing curves. Where the collision occurred most of the widening was done to the north side of the old roadway or to Bates' right. The testimony shows that Bates was travelling to his left of the center of the 70 foot area comprising the proposed new roadway, but to his right of the center of the old roadbed. The

testimony further shows that Legette was travelling to his right of the center of the 70 foot section under construction but that the collision occurred to his left of the center of the old roadway. The new roadway had not been completed and there were no markings on the road to designate the center line thereof, but the center of the old roadway was clearly marked, as heretofore stated. On the morning in question traffic was permitted, if it chose, to travel over the entire 70 foot width of the new roadway as no construction work was in progress at that time.

Legette contends that, since Bates was travelling to the left of the center of the 70 foot area comprising the new roadway, Bates was on the wrong side of the highway and that this caused the collision. On the other hand, Bates contends that the old roadway constituted the way for travel through the construction area and that the collision was caused by the act of Legette in crossing over the center line thereof into his lane of travel. Most of the controversy between Legette and Bates concerns the location of the roadway for travel through the construction area. The trial judge ruled that the old roadway was the route for travel in the area in question, so instructed the jury, and the rights, liabilities and duties of Legette and Bates were determined accordingly.

We think that the trial judge was correct in so ruling, under the facts of this case. Both Legette and Bates testified that they were travelling on the old roadway at the time, each testifying that he was travelling to his right of the center line thereof. Not only were they travelling upon the old roadway and recognized it as the route for travel, but the highway engineer who supervised the construction testified that the old roadway was kept open for use by the travelling public and motorists were supposed to use it. It was the only way, according to the testimony, maintained for travel. The widened area of the highway was not maintained for travel as it was under construction.

The appellant Legette contends, however, that Section 46-251 of the 1952 Code of Laws defines a "highway" and, under the statutory definition, the highway at the point in question included the entire 70 foot section under construction. This section provides that "the entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel is a 'street' or 'highway'." We think that appellant has confused the terms "highway" and "roadway". Section 46-254 of the 1952 Code of Laws defines a "roadway" as "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the shoulder or berm". The terms "highway" and "roadway", as used in the statutes are not synonymous, and regulation of traffic is generally with reference to the movement of vehicles on the "roadway" of a "highway". See Section 46-381 *et seq.*, 1952 Code of Laws. The record conclusively shows that the only portion of the highway in question "improved, designed or ordinarily used for vehicular travel" at the time of the collision was the old roadway consisting of the 22 foot wide concrete section.

Legette requested the trial judge to instruct the jury as to the definition of a highway as given in Section 46-251, *supra.* This is one of the grounds for his motion for a new trial. The trial judge properly refused the request. The issue was not as to the limits of the *highway* but concerned the *roadway* provided for the travelling public at the time and place. The trial judge properly instructed the jury that they should consider the fact that the public was permitted to drive across the area under construction at the time, in determining whether the parties exercised due care to avoid the collision, but that the roadway maintained for travel was the old roadbed.

The collision occurred in a zone where driving to the left of the center of the roadway was prohibited. Solid yellow lines had been placed in each lane of traffic so indicating, and obedience to such was required by statute.

Section 46-389, 1952 Code of Laws. Under the conflicting evidence, it was a jury issue as to whether Legette complied with the foregoing traffic regulation by driving to the right of the center of the 22 foot concrete section of the old highway.

We also think that the trial judge properly granted a directed verdict in favor of the respondent Banks. There is a total failure of evidence to causally connect Banks with the occurrence of the collision between Legette and Bates. The weather was clear and visibility excellent and admittedly each had an unobstructed view of approximately 1000 feet. There was no obstruction on the roadway and signs were in place warning both that they were proceeding through an area where the highway was under construction. Both saw the center line markings on the old roadway and signs were in place warning against crossing the clearly visible yellow lines in the center of the road. Both had travelled the road frequently and were familiar with it. Neither testified to any fact from which an inference could be drawn that any act of Banks in any way confused them as to the roadway maintained for travel or contributed to the collision as a proximate cause. Under such circumstances no actionable negligence on the part of Banks was shown. *Hoffman v. S. C. State Highway Department,* 229 S. C. 332, 92 S. E. (2d) 885.

The remaining question to be decided in the appeal of Legette relates to his motion for a new trial and concerns the failure of the trial Court to admit into evidence the construction contract between Banks and the Highway Department, particularly those sections under which the duty is imposed on Banks to provide and maintain proper warnings and safety precautions to protect the travelling public using the highway while under construction. Recovery was sought against Banks upon the basis of his alleged negligent failure to provide warning to the travelling public of the highway conditions at the time. It was

conceded that the road was under the control of Banks and that he owed the duty to motorists to take such precautions for their safety as the exercise of due care would require under the circumstances. Regardless of the source of the duty owed by Banks, whether arising from the contract or from the law, it was a necessary prerequisite for recovery against Banks to show negligence on its part. This has not been shown, whether referable to the contract with the Highway Department or to the duties imposed by law. Assuming the relevancy of the contract to the issues, the exclusion of it resulted in no prejudice.

The trial judge properly refused the motion of the appellant Legette for a directed verdict in his favor, and properly granted that of Banks. Neither was there error in the refusal to grant Legette's motion for a new trial.

This leaves for decision the question of whether there was error in refusing the motion of Veterans for a directed verdict in its favor. Veterans contended that Legette, in the operation of his taxi cab, was an independent contractor and not its agent. This issue was submitted to the jury for determination, resulting in the conclusion by the jury that Legette was its agent at the time. We are concerned, therefore, only in determining whether or not there is any competent evidence to sustain such finding.

The Courts have found great difficulty in laying down any hard and fast rule in determining whether the relationship of independent contractor has been established. The determination of the question in each case depends largely upon its own factual situation, subject to certain established general principles. The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work ac-

cording to his own methods, without being subject to the control of his employer except as to the result of his work." 56 J. S., Master and Servant, § 3(1) ; and "where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent; and the relationship is one of agency when the employer reserves control and an interest in the performance of the work other than the finished product, * * *". 2 C. J. S., Agency, § (2d).

Veterans was a Corporation authorized to own, operate and conduct a taxi cab business. It did an extensive taxi cab business in the City and County of Charleston, utilizing 34 cabs in its operations. Twenty six of the cabs were owned by Veterans and eight were owned by others, but operated under Veterans name on a so-called terminal fee basis. Legette operated his cab on such an arrangement with Veterans pursuant to a written agreement between them. Under this written instrument Veterans agreed to furnish to Legette the use of two-way radio equipment to be installed in his taxi, twenty-four-hour dispatcher service, the use of all taxi stands owned by Veterans, and gave Legette the right to paint his taxi with the same signs and color schemes used by Veterans on its own taxi cabs. In consideration of the above, Legette agreed to pay to Veterans the sum of $125.00 each month and agreed to abide by all rules and regulations issued by Veterans for the efficient and proper operation of a taxi company. It was further agreed that any violation of any of the terms and conditions of the agreement would render it null and void, and the right was reserved to Veterans to cancel the agreement upon three days written notice to Legette.

At the time of the collision, Legette was transporting three passengers who had been picked up at one of Veterans' taxi stands. His taxi was painted black and white, the colors used by Veterans on all of its vehicles. There was painted

on the sides of Legette's vehicle in large letters the name "Veterans Taxi Service" with the telephone number of Veterans. On the top of the taxi there was displayed a light with "Vet-Cab" written upon it. The name "S. J. Legette" was written near the top of the panel on each front door of the cab. Legette owned the cab and purchased in his name all licenses for its operation. Veterans maintained standards of courtesy and neatness for all drivers of cabs operating under its name, with which they were required to comply. The rates charged by Legette within the City of Charleston were determined by the City authorities, but rates charged for transportation outside the City Limits were determined by Veterans and two other large taxi operators, in the determination of which Legette had no voice but with which he was required to comply. All advertising was done by Veterans in its name, for which it paid the total cost.

We think the evidence is susceptible of the reasonable inferences, among others, that (1) Veterans was at the time performing a part of its taxi business through the services of Legette, (2) it prescribed the rules, regulations and methods under which Legette would deal with the customers, (3) it held itself out, through advertising and identification on the vehicle, as operating Legette's cab, (4) upon the violation of any rule or regulation by Legette, Veterans could terminate his employment, and (5) in the operation of his taxi, Legette had no identity as a taxi operator except as a member of the Veterans Taxi Service.

The trial judge was correct in ruling that the foregoing testimony presented a jury issue as to the relationship between Legette and Veterans, that is, whether Legette was an independent contractor or an agent of Veterans at the time of the collision, and properly refused the motion of Veterans for a directed verdict in its favor. See, Annotations: 120 A. L. R. 1351 and 131 A. L. R. 797, and cases therein cited.

Affirmed.

TAYLOR, C. J., and OXNER, LEGGE and MOSS, JJ., concur.