**Grady ALLEN, Appellant,**

v.

**ZURICH INSURANCE COMPANY,**
**Appellee.**

No. 80–1665.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1981.

Decided Jan. 8, 1982.

**6.** The heroin seized had a 52.8% purity value. The purity of street-use heroin is 2–5%.

Duke K. McCall, Jr., Greenville, S. C. (Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief), for appellant.

George E. Lewis, Columbia, S. C. (Turner, Padget, Graham & Laney, Columbia, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this diversity case Grady Allen sued Zurich Insurance Company to recover the amount of a personal injury judgment earlier obtained by Allen against Zurich's insured under a liability policy. Following a jury verdict in Allen's favor, the district court granted judgment n. o. v. for Zurich on the basis that the evidence established as a matter of law that Allen was an employee of Zurich's insured so that Zurich was not liable under an exclusion in the liability policy. On Allen's appeal, we affirm the district court's judgment n. o. v., but on other grounds.

I

In August 1975, Allen was assisting Zurich's insured, Carl Scruggs, in installing a mobile home when the home, which Scruggs had placed on blocks, shifted, fell, and crushed Allen's hand. Allen later sued Scruggs in a South Carolina state court on a negligence theory to recover for his injuries "while in the employment of the Defendant, Carl H. Scruggs, . . . ." Complaint, *Allen v. Scruggs*, No. 76–CP–23–92 (Greenville, S.C. County Ct. C.P.). Zurich defended Scruggs under a reservation of rights clause in a general automobile liability policy issued to him. The case proceeded to trial and as part of his charge to the jury, the trial judge instructed that "[t]he first material allegation which the plaintiff must establish is that he was an employee of the defendant, with the defendant owing a duty of care to him." Tr. at 173, *Allen v. Scruggs*, No. 76–CP–23–92 (Greenville, S.C. County Ct. C.P.). The jury returned a verdict for Allen of $37,000, which Scruggs has not paid.

Allen then brought suit against Zurich to collect on Scruggs' automobile liability policy and alleged in the complaint that he and Scruggs were joint venturers. In defense, Zurich claimed that it was not liable because Allen was Scruggs' employee at the time of his injury and the policy expressly excluded coverage for bodily injury to any employee. At trial, Allen testified that he had thought he was Scruggs' employee in 1975, but he now characterized their relationship as working together. Scruggs supplied the equipment, solicited many of their jobs, and directed the activity leading to the injury. Allen, however, was paid a percentage of each job rather than a salary, he never received a W–2 form, he had no regu-

lar working hours, and he picked up other service work for himself on the side. During cross-examination, Allen admitted that he had testified before the South Carolina Industrial Commission in December 1975, in a deposition in February 1976, and before the state court in January 1977, that he was Scruggs' employee and was paid a weekly salary of $250 in cash at the time of his injury. Portions of that testimony were admitted into evidence in this action. Scruggs, however, testified that Allen was not his employee, but a contract laborer. An August 1975 letter from Scruggs to the Anderson County, S. C. Department of Social Services, which corroborated Scruggs' testimony, was admitted into evidence.

The district court permitted the case to go to the jury which returned a verdict for Allen. Zurich then moved for judgment notwithstanding the verdict on two grounds: (1) Allen's status as an employee of Scruggs was affirmatively adjudicated in the state court proceeding and Allen is now bound by that determination and (2) the only reasonable inference to be drawn from the evidence presented at trial is that Allen was Scruggs' employee and acting within the scope of his employment when he was injured. The district court granted the motion on the second ground.[1] This appeal followed.

## II

■ Zurich defended solely on the basis that Allen was Scruggs' employee, acting in the course and scope of his employment at the time of his injury and that liability for the injury was therefore expressly excluded from the coverage of its policy. This was an affirmative defense as to which Zurich had the burden of proof. The district court correctly treated it as such. When the jury returned a verdict for Allen, the district court's subsequent grant of judgment n. o. v. was therefore entered in favor of the party having the burden of proof on the sole dispositive issue.

There is, of course, judicial power under Fed.R.Civ.P. 50 to direct a verdict or grant judgment n. o. v. for, as well as against, the party having the burden of proof on the dispositive issues on the basis of a legal assessment of the evidence. *Davis Frozen Foods, Inc. v. Norfolk Southern Railway,* 204 F.2d 839 (4th Cir. 1953) (directed verdict for plaintiff); *United States v. Grannis,* 172 F.2d 507 (4th Cir. 1949) (same); *see also Federal Insurance Co. v. Summers,* 403 F.2d 971, 975–76 (1st Cir. 1968) (directed verdict for defendant with burden considered but denied). But the power is controlled by a standard so stringent that its exercise is but rarely appropriate. The standard is in critical respects different from and more demanding than that applicable to the grant of directed verdict against the proponent. As well explained by Judge McLaughlin:

> [T]hough a motion for directed verdict in favor of the proponent of an issue is cast in the same form as when made by the defending party, it requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding. The ultimate conclusion that there is no genuine issue of fact depends not on a failure to prove at least enough so that the controverted fact can be inferred, but rather depends on making impossible any other equally strong inferences once the fact in issue is at least inferable.

*Mihalchak v. American Dredging Co.,* 266 F.2d 875, 877 (3d Cir. 1959) (footnote omitted); *see also United States v. Grannis,* 172 F.2d at 513.

Applying that standard to the evidence in this case, we do not think it was appropriate to grant judgment n. o. v. for Zurich on

---

1. With respect to the first ground, the district court held that there was no res judicata bar because the state action sounded in tort and the federal suit was an action *ex contractu* and there was no collateral estoppel because Allen's status as an employee was not a material issue necessarily determined in the state action. See Part III, *infra.*

this basis. The dispositive issue was whether at the critical time Allen was Scruggs' employee acting in the course and scope of his employment. Under controlling South Carolina law the general test whether one person is the employee of another is

"control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. . . ." *Bates v. Legette*, 239 S.C. 25, 34–35, 121 S.E.2d 289, 293 (1961).

This court, like most, has recognized four factors bearing on the crucial right of control. These are (1) direct evidence of the right to, or exercise of, control, (2) method of payment, (3) furnishing of equipment, and (4) right to fire.

*Chavis v. Watkins*, 256 S.C. 30, 180 S.E.2d 648, 649 (1971).

Under this test the evidence was in substantial conflict, particularly with respect to the essentially evaluative element of the right to control. Allen's own testimony on this element was in major respects blatantly self-serving, shot through with legal characterizations, internally inconsistent, and in flat conflict with his own earlier self-serving testimony and statements made in contexts where his interests in the nature of the relationship were diametrically different. But contradictions, inconsistencies and self-interest present questions of credibility and of probative weight for the jury, which was perfectly entitled, for example, utterly to discount all of Allen's legal characterizations of the critical relationship as having no probative value, leaving for consideration only the raw historical facts bearing upon whether Scruggs had the right to control. *See Restatement (Second) of Agency* § 220, Comment m (1957). Beyond this the evidence of the method of payment and the right to fire could, depending upon credibility determinations and assessments of probative weight, lead to conflicting inferences. Only on the evidence of the furnishing of equipment was there essentially no conflict and no need for assessments of credibility; that the equip-

ment was furnished by Scruggs was not really in dispute. Resolution of the critical agency issue requires evaluation of all the factors, however; no one of them is determinative as a matter of law; and for this reason, its resolution is ordinarily one for the trier of fact. *See id.* Comment c.

We must bear in mind the critical point that here the burden of persuasion was not upon Allen to establish that he was not Scruggs' employee, but upon Zurich to establish that he was. To hold that Zurich was entitled to judgment as a matter of law we must find that not only was there sufficient evidence, so manifestly credible that it must be believed, to support a finding that Allen was Scruggs' employee, but also that there was insufficient evidence from which the jury could rationally have made any other finding. *See Mihalchak v. American Dredging Co.*, 266 F.2d at 877. This we cannot do, and we therefore conclude that the district court erred in granting judgment n. o. v. on this basis. This does not, however, end the matter.

### III

Zurich contends alternatively that judgment n. o. v. was proper because Allen is legally estopped by the state court judgment to contest the fact that he was Scruggs' employee. As indicated, in that state court action Allen expressly alleged that he was at the time of injury "in the employment of . . . Scruggs." This allegation was submitted to the state court jury as one that the plaintiff "must establish" in order to recover. By the return of a verdict in favor of Allen, Zurich says that this issue was necessarily determined in Allen's favor, that it was essential to the resulting judgment, and that under relevant principles of collateral estoppel Allen should be now precluded from contesting the fact so established. *See Restatement (Second) of Judgments* § 68 (1980); *Johnston-Crews Co. v. Folk*, 118 S.C. 470, 111 S.E. 15 (1922). We can of course properly affirm a district court's judgment though it was entered upon an erroneous basis, *Securities & Ex-*

*change Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978), and Zurich urges that we should do that here on the basis of collateral estoppel.

◼ While this contention is not without force, we are sufficiently concerned about a number of problems in applying collateral estoppel under the particular circumstances of this case that we decline to do so. There is the question whether the issue was actually litigated in the state action. This does not conclusively appear from our record. From our record it might be concluded that, though submitted to the jury, the issue had not actually been contested on trial. *See Restatement (Second) of Judgments* § 68, Comment e (1980). The burden is on the party asserting collateral estoppel to establish its predicates, and this of course includes presenting an adequate record for the purpose.

◼ There is also a question whether Zurich is entitled as a party to the federal action to the benefit of collateral estoppel. This would depend upon whether the doctrine of mutuality of estoppel still holds in South Carolina, whose law respecting the conclusiveness of its own judgments we must apply, 28 U.S.C. § 1738, or whether, alternatively, Zurich could properly be held to be in privity with Scruggs and thereby entitled to the benefit of the state court judgment. On the first point we have been directed to no authority; and on the second, Allen has raised at least the colorable possibility of a conflict of interest between Zurich and Scruggs [2] that might draw in question the justice of according to their rela-

tionship the privity that ordinarily would exist between insurer and insured for this purpose. Allen also urges that the issue of his employment status was not essential to the judgment in the state action, so that this critical predicate for application of collateral estoppel is missing. *See Restatement (Second) of Judgments* § 68, Comment h (1980). For reasons we will later develop, we are not impressed by this last contention, but we are sufficiently concerned by the other problems that we think collateral estoppel is not appropriately applied here. But neither does this end the matter.

◼ Closely related to collateral estoppel, but dissimilar in critical respects, is another principle that we conclude should preclude Allen on the dispositive issue. In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. "Judicial estoppel" is invoked in these circumstances to prevent the party from "playing fast and loose" with the courts, and to protect the essential integrity of the judicial process. *See United Virginia Bank/Seaboard National v. B. F. Saul Real Estate Investment Trust*, 641 F.2d 185, 190 (4th Cir. 1981); *Scarano v. Central R. Co.*, 203 F.2d 510, 512–13 (3d Cir. 1953); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1177 (D.S.C.1974).

◼ The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, but they may be found where neither collateral estoppel nor equitable estoppel, *see Scarano v. Central*

---

2. In his reply brief on this appeal, Allen points out that in the state court action Zurich, defending Scruggs under its policy and on a reservation of rights, presumably took the position (against Allen's allegation) that Allen was not Scruggs' employee. This, says Allen, puts Zurich in a poor position to urge Allen's equitable estoppel to change positions or relitigate the question in this action. If true, this would also obviously bear upon the privity question, assuming it still has relevance under South Carolina collateral estoppel doctrine. *See Restatement (Second) of Judgments* § 83, Comment d

(1980). For two reasons we think the matter cannot properly be considered on this appeal. First off, assuming its relevance, the record on this appeal would not allow its fair consideration, since the specific circumstances of Zurich's defense are not developed. Furthermore, we doubt Allen has standing to raise in this litigation any question of a conflict of interest between Zurich and Scruggs relating to the former's defense of the state court action. That would seem a matter between insurer and insured.

*R. Co.,* 203 F.2d at 512–13, nor any requirements of election of remedies or theories, *see Eads Hide & Wool Co. v. Merrill,* 252 F.2d 80, 84 (10th Cir. 1958), would apply. Its essential function and justification is to prevent the use of "intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v. Central R. Co.,* 203 F.2d at 513. This obviously contemplates something other than the permissible practice, now freely allowed, of simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached. See Fed.R.Civ.P. 8(e)(2). That, obviously, is not what is involved here. Though perhaps not necessarily confined to situations where the party asserting the earlier contrary position there prevailed, it is obviously more appropriate in that situation. *See United States v. Webber,* 396 F.2d 381 (3d Cir. 1968); *Parker v. Sager,* 174 F.2d 657 (D.C.Cir.1949); *Buder v. United States,* 332 F.Supp. 345 (E.D. Mo.1971). That is the situation here.

■ On total balance we are persuaded that, though the principle is one to be applied with caution, it is properly applied here. Here is a party who, as the record conclusively shows, has earlier successfully asserted a legal position respecting his employment relationship with another that is completely at odds with the position now asserted.[3] The position taken in the state court action was taken advisedly and inured to Allen's benefit there. While the earlier assertion of a legally irrelevant, albeit inconsistent, position should seldom, if ever, lead to the application of judicial estoppel, *see, e.g., Gleason v. United States,* 458 F.2d 171 (3d Cir. 1972), we disagree with Allen's contention that his earlier position in the state court action was there, in the end, legally irrelevant. The duty of care in negligence actions is not determined in a vacuum. It always arises from the particular relationship of victim and alleged tortfeasor. There is a very specific duty of care owed by employer to employee that is not necessarily the same duty that would subsist in the same general factual setting between joint venturers, independent contractors, or certainly complete strangers. Depending upon the situation, it may well be a higher duty than would arise out of any of those other relationships in the same factual context. *See generally Restatement (Second) of Agency* §§ 493, 497 (1957). This general principle of tort and agency law applies in South Carolina, *see, e.g., Tucker v. Holly Hill Lumber Co.,* 200 S.C. 259, 20 S.E.2d 704 (1942), and was specifically applied in Allen's state court action by the state judge who submitted Allen's allegation to the jury as bearing upon his right to recover. Allen obviously thought it sufficiently important in his state court action to make a deliberate allegation that the relationship was that of employer and employee rather than any of a number of others from which different and lesser duties of care might have arisen.

We are satisfied that this is a case in which it is sufficiently important to the integrity of the federal courts[4] that their

---

3. As a matter of fact, it appears uncontradicted that Allen had not only earlier taken a directly contrary position respecting the relationship in the state court action, but that he had taken the same contrary position in one state administrative proceeding where that also suited his purpose and, with Scruggs' cooperation, a still different one when it suited both their purposes in connection with yet another state administrative matter. Whether or not these administrative proceedings would independently have provided the predicates for application of judicial estoppel, they further support the conviction that no further judicial aid should be given

this particular enterprise of blowing hot and cold as the occasion demands.

4. Although this is a diversity case, we consider that federal law controls the application of judicial estoppel, since it relates to protection of the integrity of the federal judicial process. We think that neither 28 U.S.C. § 1738, the full faith and credit statute, nor *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires inquiry into the possible existence of a conflicting state rule.

As to the former, the question is not the effect to be accorded the state judgment as res judicata or collateral estoppel, a matter to

judicial processes should not be lent to this plain example of "intentional self-contradiction ... as a means of obtaining unfair advantage...." *Scarano v. Central R. Co.*, 203 F.2d at 513. For this reason [5] we affirm the judgment of the district court granting judgment n. o. v. to the defendant Zurich.

AFFIRMED.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

The majority, I think, are too precipitate to accuse and convict Allen of the despicable conduct of "playing fast and loose" with the Court by first characterizing to his advantage his working relationship with Scruggs as an employee and later maintaining, also to his benefit, that he was not an employee. The initial instances charged are Allen's allegations in his State court complaint against Scruggs for personal injury damages, and also in his statements before the South Carolina Industrial Commission, to the effect that he was Scruggs' employee. The subsequent instance charged is his testimony in the immediate suit in the District Court to recover on the Zurich policy, denying that he was Scruggs' employee.

To be noted at once is that, when interrogated upon these contradictions at trial in the District Court, Allen was not evasive or equivocal, acknowledging that he made the responses attributed to him. His explanation was simply and plainly that he had answered in the way he did because of his ignorance of the precise definition of the term "employee."

On this point the Federal jury presumably upheld him as having proved the truth of this explanation by his testimony as well as upon other evidence to the effect that, when engaged with Scruggs in any undertaking, he was a co-worker and, indeed, at the same time he had a somewhat similar and related but separate business of his own. Against this proof Zurich proffered no evidence except to cross-examine Allen upon his answers in the first case.

Indeed, the majority concede that the judgment n. o. v. vacating Allen's favorable verdict cannot stand as an adjudication that Allen was an employee. With this verdict undisturbed and the foregoing evidence in mind, it is difficult to accept the majority's denial of recovery by Allen and to do so on the thesis of "judicial estoppel." Incidentally, no such averment was even hinted, much less advanced, by Zurich in the trial or its written and oral arguments on this appeal. All arguments briefed or urged orally have been abandoned. Under the law of South Carolina, which controls in the Federal court in this removed case,[1] a party

---

which 28 U.S.C. § 1738 clearly does speak, *see, e.g., Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978), but the effect to be given in federal court to the attempt there to establish a legal/factual position directly conflicting with one earlier taken in another judicial tribunal, whether state or federal.

As to the latter, we think that in the final analysis, *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), would dictate application of the federal rule here recognized rather than any conflicting, "outcome determinative" state rule that might be found.

5. Although this ground was not specifically raised either in the trial court or on appeal, we are satisfied that under the circumstances of its close relationship to the directly contested issue of collateral estoppel we may properly rely upon it as an alternative basis for affirmance. *See generally* 10 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2716 (1973); *cf. Yale v. National Indemnity Co.*, 602 F.2d 642,

650 n.18 (4th Cir. 1979) (inappropriate where issues not sufficiently developed).

1. The majority opines that the dispositive concern is the "protection of the integrity of the federal judicial process," and concludes that Federal law alone controls this point. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, however, teach that the preeminent factors to be weighed in the balance are the "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). Although the Federal policy noted by the majority is not without some force, it must yield when the choice of a Federal rule necessitates a result contrary to that attaining under the applicable state rule. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945),

*Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d

may without prejudice take inconsistent positions in different actions, as is now charged to Allen by Zurich.[2] The insurance company cannot be allowed to preclude this right of Allen by removing this action to the Federal forum.

Additionally, the record discloses pertinent inconsistencies in Zurich's behavior. Having first unsuccessfully defended Scruggs in the State Court action on its plea that Allen *was not* an employee, the insurance company now seeks to avoid its own liability to pay Allen's claim because he *was* an employee. With the equities in such parity, this case presents a singularly poor candidate for reversal on the proposed grounds.

For me a startling injustice is done here. While at work, Allen, without fault, received a hand-crushing blow through another's neglect, and now a monetary award for his suffering is stricken under a theory upon which he was *never* heard, at trial, on appeal or otherwise. This offends my sense of justice.

---

953 (1958), is not contrary to this position. There the Supreme Court stressed that they did "not think the likelihood of a different result is so strong as to require the federal practice . . . to yield to the state rule in the interest of uniformity of outcome." *Id.* at 540, 78 S.Ct. at 902. In the instant case, however, the proposed Federal rule would *require* a different outcome; the "interest of uniformity of outcome" is directly jeopardized.

2. The Supreme Court of South Carolina recently displayed its hostility towards the doctrine now espoused by the majority. *MacFarlane v. Manly,* 264 S.E.2d 838 (S.C.1980). The court in

*MacFarlane* makes the following pertinent statement:

> Much is made in argument of the fact that some of the allegations of the complaint against the defendant in an earlier action are inconsistent with the positions now taken by the [plaintiff MacFarlane]. Such can be of little comfort. The fact that a plaintiff, in different lawsuits, may take inconsistent positions does not as a matter of law bar the right to recovery.

264 S.E.2d at 840. The opinion continues to suggest that such inconsistencies merely present questions of credibility to be resolved by the jury.