**EAGLE–PICHER INDUSTRIES, INC.**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, et al.**

Civ. A. No. 83–348–Z.

United States District Court,
D. Massachusetts.

July 10, 1986.
As Corrected July 14, 1986.

Charles R. Parrott, Brian T. Kenner, Nutter, McClennan & Fish, Boston, Mass., Brian T. Kenner, Scott R. Schoenfeld, Nutter, McClennan & Fish, Washington, D.C., for Eagle–Picher.

Richard H. Gimer, Hamel & Park, Washington, D.C., for American Employers.

Alice E. Richmond, Hemenway & Barnes, Boston, Mass., for Prudential Reinsurance.

Mark Michelson, Charles E. Jarrett, Choate, Hall & Stewart, Boston, Mass., for American Motorists.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Eagle–Picher Industries, Inc., a manufacturer of asbestos products, has been a plaintiff in two separate declaratory judgment actions against various insurance companies. It has moved for entry of final judgment against American Employers Insurance Co. ("American Employers") and Prudential Reinsurance Company ("Pru Re"), defendants in the second case, based on this Court's decision in the first case.

Eagle–Picher manufactured asbestos products from 1931 to 1971. During the years 1968 to 1979 it carried liability insurance in varying amounts and layers with a number of insurance companies. Because a dispute arose as to the rights and liabilities under the different policies, Eagle–Picher brought declaratory judgment actions to clarify which, if any, policies covered the various asbestos-related claims.

The first case, Civil Action No. 78–2739 ("the 1978 case" or *"Eagle–Picher I"*), resulted in a decision in 1981, affirmed in 1982, that coverage of the policies in issue was triggered on manifestation of, not exposure to, the disease. The Court of Appeals remanded, however, for determination of the date of manifestation, which it defined as the date on which the asbestos-related disease becomes "reasonably capable of medical diagnosis." *Eagle–Picher Industries, Inc. v. Liberty Mutual Insurance Company,* 682 F.2d 12, 25 (1st Cir. 1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

While the appeal in the first case was pending, the Court of Appeals for the District of Columbia decided *Keene Corporation v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), which established the expansive "triple trigger" theory of

coverage. Eagle–Picher having failed to persuade the First Circuit to adopt the triple trigger filed the second action in the U.S. District Court for the District of Columbia. On February 1, 1983, Judge Gesell, *sua sponte*, transferred that case ("the 1983 case" or *"Eagle–Picher II"*) to the District of Massachusetts.

After remand of *Eagle–Picher I* and transfer of *Eagle–Picher II*, both cases were to proceed in this Court. In the 1978 case the question was how to implement the First Circuit decision, i.e., how to determine in each case when an asbestos-related disease is "reasonably capable of medical diagnosis." In the 1983 case defendants had moved for partial summary judgment, claiming that Eagle–Picher should be precluded from relitigating the trigger of coverage question already decided in *Eagle–Picher I.*

As it happened, the two sets of parties were not ready to go forward on the same schedule. Consequently, in August 1984 this Court held a week-long implementation hearing in the 1978 case, involving Eagle–Picher and the last remaining 1978 defendant,[1] American Motorists Insurance Company. On November 8, 1984, I granted the preclusion motion of defendants in *Eagle–Picher II*, finding that the case presented "the classic situation for the application of defensive collateral estoppel." And on May 30, 1986 I issued a Memorandum of Decision in the 1978 case, which resulted in a final judgment on July 2, 1986, ending *Eagle–Picher I.*

Plaintiff has now moved for entry of final judgment[2] against the 1983 defend-

ants, based on the May 30, 1986 Memorandum of Decision. Defendants oppose the motion on the ground that they were not parties to the 1978 case and they have not had a full and fair opportunity to litigate the issues decided therein. In particular, though defendants have agreed to be bound by the theory of coverage applied in *Eagle–Picher I*, they do not wish to be bound by the method of implementation litigated in the 1978 case without their participation.

In support of its motion for judgment against the 1983 defendants, Eagle–Picher argues that this Court's November 1984 ruling on preclusion renders its May 1986 implementation decision in *Eagle–Picher I* applicable to the 1983 case. In reaching this conclusion, plaintiff reads the preclusion decision broadly as a holding that "the First Circuit decision defines the rights and obligations of the parties in the 1983 case." Eagle–Picher does not argue that the 1983 defendants, who were not parties to the 1978 case, are collaterally estopped from litigating the trigger of coverage and implementation issues.[3] However, in plaintiff's view, estoppel against the 1983 defendants is the practical effect of the preclusion ruling.

Plaintiff's logic is straightforward. This Court held originally that coverage is triggered when the asbestos-related disease manifests itself. The First Circuit agreed, and defined manifestation as the date on which the disease "becomes reasonably capable of medical diagnosis." Then, on the basis of the 1984 implementation hearing, this Court determined that asbestos-related

---

1. The other *Eagle–Picher I* defendants had by that time settled.

2. As defendants have pointed out, it is not at all clear that a motion for entry of final judgment can properly be maintained against nonparties under Rule 58 or any other authority. I therefore treat this filing, as a memorandum expressing Eagle–Picher's view as to the preclusive effect of this Court's decision and judgment entered in the 1978 case.

3. The motion for summary judgment on the trigger of coverage issue was a defensive non-

mutual use of collateral estoppel on which defendants prevailed because the identical issue they sought to preclude was actually and necessarily decided on the merits in *Eagle–Picher I. See Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980). It is axiomatic that a party using collateral estoppel defensively is not itself bound by a prior ruling held to have preclusive effect, where the movant was not a party to the earlier litigation. *O'Reilly v. Malon,* 747 F.2d 820, 822–23 (1st Cir.1984) ("collateral estoppel turns on whether or not the parties had a full and fair opportunity to litigate a matter").

disease becomes reasonably capable of medical diagnosis "six years prior to the date of actual diagnosis." Plaintiff has reduced this sequence to a logical equivalence:

MANIFESTATION = REASONABLY CAPABLE OF MEDICAL DIAGNOSIS = SIX YEARS PRIOR TO DATE OF ACTUAL DIAGNOSIS.

By this line of reasoning, once defendants had agreed to be bound by the manifestation trigger of coverage, they had necessarily agreed to be bound by the six-year roll-back method of implementation, because the implementation decision was nothing more—and nothing less—than an unpacking of the First Circuit's trigger of coverage holding. As plaintiff puts it, defendants chose to buy a "pig in a poke" when they asked this Court to rule on preclusion before it had ruled on implementation, and they cannot now be heard to complain that they don't like the looks of the pig. In fact, plaintiff insists, the doctrine of "judicial estoppel," which prohibits a party "from adopting a legal position in conflict with one earlier taken in the same or related litigation," *Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982), precludes defendants as a matter of law from now seeking to litigate the implementation issue.

Plaintiff's position, though appealing as a matter of abstract logic, finds little support in the history of this litigation. As defendants have pointed out, they have not taken inconsistent positions regarding the preclusive effect of *Eagle–Picher I*. They never sought to give the 1978 case preclusive effect for all purposes; they merely sought to preclude relitigation by plaintiff of the theory of coverage. The principle behind defendants' preclusion motion—that Eagle–Picher had had a "full and fair opportunity" to litigate the identical issue in the prior case—is not one that defendants now seek to abandon in an act of "intentional self-contradiction" designed to obtain an unfair advantage, *see Scarano v. Central Railroad*, 203 F.2d 510, 513 (3d Cir. 1953). Rather, it is precisely the principle they now invoke to obtain their own "full and fair" opportunity to offer evidence on implementation. As there is no contradiction in defendants' position, there can be no question of applying "judicial estoppel" to this case.

This reading of the logic of defendants' position is borne out by the record of proceedings. Recognizing at the time of the March 26, 1984 hearing on preclusion that the parties in *Eagle–Picher I* and *II* could not meet the same discovery schedule, I explicitly bifurcated proceedings, stating that: "With respect to American Motorists, my inclination is to go forward as scheduled. With respect to the others, ..., I will not schedule hearings on implementation with respect to them or discovery leading to implementation until after the decision on the pending motion for summary judgment." Transcript of Proceedings of March 26, 1984, at 38–39. I also invited any parties to attend the implementation proceedings in the 1978 case "in a ceremonial capacity," but I made it clear that American Motorists and Eagle–Picher were "the only active participants." *Id.* at 44–50.

Under the circumstances, American Employers and Pru Re cannot be said to have waived their rights to an implementation hearing. On the contrary, though they have agreed to be bound by the trigger of coverage decision in *Eagle–Picher I*,[4] they have been careful to safeguard—in the record—their right to offer evidence on implementation.

For the reasons stated, plaintiff's motion for entry of final judgment is denied, and implementation proceedings in the 1983 case are scheduled to go forward as follows. By August 15, 1986, the parties shall designate their experts and file written outlines of their implementation proposals. A pretrial conference will be held on September 11, 1986, at 3:00 p.m. Based on these filings and the pretrial conference,

---

**4.** As noted previously, they as nonparties are not bound as a matter of law.

the Court will set a date for the implementation hearing.