**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0196n.06

Case No. 16-1076

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ABDULMOKNE GHALEB, | ) | **FILED** |
| | ) | Mar 31, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| AMERICAN STEAMSHIP COMPANY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

BEFORE: KEITH, McKEAGUE, and WHITE, Circuit Judges.

McKEAGUE, Circuit Judge. Abdulmokne Ghaleb sued American Steamship under the Jones Act, 46 U.S.C. §§ 30101, 30104, for an injury that he says he suffered working aboard its tugboat-and-barge combination, the *Ken Boothe/Lakes Contender* ("Boothe/Contender"). As the crew stored those vessels for the winter, Ghaleb's fellow employees dropped a heavy cable which slid into his heels, knocking him to the ground. At trial, Ghaleb pursued various liability theories based on this cable incident, including a negligence per se claim alleging that the crew's excessive work hours contributed to the accident. After nine days of trial, a unanimous jury rejected Ghaleb's claims. Despite this verdict, the district court granted Ghaleb's motion for judgment as a matter of law on negligence per se. For the following reasons, we REVERSE and REMAND with instructions to enter judgment for American Steamship.

I

In late December 2012, Ghaleb and the rest of the crew aboard the *Boothe/Contender* prepared to store the vessels for the winter in Sturgeon Bay, Wisconsin. As part of the storage process, the crew must separate the barge from the tugboat. Separation from the tug requires the barge to connect to a new onshore power source. To link the barge to onshore power, the crew uses a large electrical cable.

When the *Boothe/Contender* crew attempted this power transfer, the crew started with the power cable lying across the barge's deck in a cane-like shape with the cable's loose end forming a hook that curved toward the shore. This positioning forced the crew to lift the cable's loose end and then lower it over the barge's side to an electrician on the dock. The vessels' Chief Engineer, Peter Warren, directed this lowering maneuver. To help him lift the cable, the Chief selected four crew members: Ghaleb, Mohsen Al-Qasemi, Abdulghafor Ahmed, and Ricky Pettaway.

The Chief positioned everyone at various points along the hook-shaped stretch of cable. Ghaleb stood closest to the end, followed next by Ahmed, and then by Al-Qasemi. The Chief positioned himself and Pettaway further back along the cable, nearer to the middle of the deck. Chief Warren says that at some point after the team lifted the cable, the crew realized they needed to tie a heaving line to the cable's loose end. A heavying line is simply a lightweight line that assists in moving heavier lines between locations—here, between the ship's deck and the shore. So the Chief tasked Ghaleb with retrieving the line, tying one end to the cable, and tossing the line's other end down to an electrician on the dock.

The parties dispute the details surrounding this lowering maneuver. All agree, however, that Ahmed and Al-Qasemi dropped the power cable while Ghaleb dealt with the heaving line.

Also, everyone is certain that the once the cable fell to the deck, it slid into Ghaleb's heels and knocked him to the ground. Ghaleb alleges this fall caused him severe injuries.

Ahmed testified that he dropped the cable because he slipped on ice. Al-Qasemi said that he lost his grip because Ahmed dropped the cable. Both testified that when the crew executed the maneuver, thick ice covered the deck. Chief Warren disputed this characterization of the deck's condition and testified that, despite some thin ice patches, the deck was in good shape due to the large amounts sand and salt that the crew had applied.

Based on this incident, Ghaleb sued American Steamship for negligence, negligence per se, and unseaworthiness. Ghaleb's negligence theories centered on whether Chief Warren placed Ghaleb in an unsafe position where the cable's loose end might strike him if dropped—a so-called "danger zone." He based his negligence per se theory on American Steamship's alleged violations of a work-hours statute regulating Great Lakes towing vessels. *See* 46 U.S.C. § 8104(c) (limiting seamen's workhours to 15 hours in 24 or 36 hours in 72, except in emergencies). At trial, Ghaleb presented testimony and business records to show that he, Ahmed, Al-Qasemi, and Chief Warren all exceeded the statute's limits.

The jury unanimously found for American Steamship on all counts. So Ghaleb renewed a motion for judgment as a matter of law on every claim. The district court denied Ghaleb's motion with respect to unseaworthiness and negligence. As to negligence, the court held that "a reasonable jury could have concluded that Chief Warren did not breach a duty to protect Plaintiff from a foreseeable risk of harm." *Ghaleb v. Am. Steamship Co.*, No. 13-13822, 2016 WL 28986, at *6 (E.D. Mich. Jan. 4, 2016). It stated that, although Chief Warren directed the cable-lowering maneuver, it was "not evident from the trial testimony that Chief Warren instructed Plaintiff on where to stand when Plaintiff went to throw the heaving line to the dock." *Id.* The

court also added that despite "testimony that Chief Warren should have realized that Plaintiff was in a danger zone," a "reasonable jury could have disagreed . . . and found that no one was at fault for Plaintiff's injury." *Id.* at *7.

On Ghaleb's negligence per se claim, the district court overruled the jury verdict and awarded judgment to Ghaleb. The court held that a reasonable jury could find only that Ghaleb, Chief Warren, Al-Qasemi, and Ahmed all "worked more than the hours permitted by the statute in the days leading up to Plaintiff's accident." *Id.* at 5. The court added that there was "no explanation except for a lack of 'immediate and wakeful readiness' for why Plaintiff . . . did not extricate himself from the area where he was throwing the heaving line to shore when he recognized he would be hit by the power cable and possibly killed if the other men began moving the cable." *Id.* American Steamship now appeals the district court's decision to enter judgment notwithstanding the verdict on Ghaleb's negligence per se claim.

II

This court reviews de novo the district court's grant of a motion for judgment as a matter of law. *Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 602 (6th Cir. 2007). Judgment as a matter of law is appropriate where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party[.]" Fed. R. Civ. P. 50(a). Thus, a motion should be granted only if "reasonable minds could not come to a conclusion other than one favoring the movant." *Parker*, 491 F.3d at 602 (quoting *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005)).

Under this JMOL standard, we consider the evidence in the light most favorable to the non-movant—here, American Steamship. *See id.* We do not substitute our judgment for the

jury's by reweighing the evidence or questioning witnesses' credibility. *Id.* Instead, we give the non-movant the benefit of all reasonable inferences. *See id.*

Because the JMOL standard focuses on evidentiary sufficiency, courts have recognized that granting the motion for a party with the burden of persuasion should happen only in "extreme cases." 9B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2535, Judgment as a Matter of Law for Claimant (3d ed.). The court must determine that the "effect of the evidence is not only sufficient to meet [the] burden of proof, but is overwhelming, leaving no room for the jury to draw significant inferences in favor of the other party." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 165–66 (D.C. Cir. 2015) (quoting *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990)). Stated differently, there must simply be "insufficient evidence for permitting any different finding." *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959). This court has said in the related summary judgment context that a party bearing the burden of persuasion at trial has a "higher" burden and must show "that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (citations and quotation marks omitted). In short, "[i]t is rarely appropriate to grant a directed verdict or judgment n.o.v. in favor of the party having the burden of proof[.]" *Radtke*, 795 F.3d at 165.

Here, the parties contest just two negligence per se elements: statutory violations and causation. Assuming American Steamship violated the safety statute—a rather safe assumption from the evidence—this case requires us to apply the demanding JMOL standard in conjunction with the Jones Act's unusually relaxed proximate cause standard. As Ghaleb correctly asserts, the Act lessens his burden on the causation element—he must prove only "that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (discussing the

causation standard under the Federal Employers' Liability Act which the Jones Act incorporates). But Ghaleb conflates this relaxed causation standard with a relaxed JMOL standard. He asserted multiple times at oral argument that he needed only to show "any evidence" that a violation played a role in his accident to prevail on his JMOL motion. Oral Argument at 27:50-35:40.

To be clear, this is wrong. For Ghaleb to be entitled to JMOL, he must show that no reasonable jury could find that statutory violations lacked any contributory role in his accident. Because Ghaleb predicates negligence per se liability on work-hours violations, this essentially means that if the jury could find that no sailor's fatigue played a causal role in his accident, Ghaleb is not entitled to JMOL. Here, the evidence presented on each sailor allowed a reasonable jury to conclude that this was either a faultless accident or an accident unrelated to fatigue.[1]

We look first at Ghaleb. The district court stated that there was "no explanation except for a lack of immediate and wakeful readiness" for why Ghaleb stayed in the cable's path when throwing the heaving line down to the dock. *Ghaleb*, No. 13-13822, 2016 WL 28986, at *5 (internal quotation marks omitted). This conclusion merely infers causation from negligence itself. Such reasoning makes sense when counterfactuals prove but-for causation to a near certainty. *See Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 161–62 (5th Cir. 1985) (holding that a company's negligent failure to install a railing in "the precise spot of [the plaintiff's] fall" established causation as a matter of law). Usually, however, mere negligence alone does not *require* any finding on causation. *See Wilkins v. Am. Exp. Isbrandtsen Lines, Inc.*, 446 F.2d 480,

---

[1] At one point during oral argument, Ghaleb was asked whether a reasonable jury could find no causal connection between fatigue and the accident, and he conceded that a jury had "plenty of evidence" to conclude that statutory violations played "no part." Oral Argument 31:00-31:40. We do not consider this admission conclusive, especially given that his briefing contemplates the correct standard. Still, it is somewhat telling because Ghaleb appeared to comprehend the question's premise—he simply misunderstood in that moment its import.

484 (2d Cir. 1971) (holding that when a seaman's heart attack followed excessive work hours, no burden-shifting causation rule applied because a "justifiable inference is not a synonym for a presumption"). And no evidence related to this lowering maneuver would force a reasonable jury to conclude only that Ghaleb's fatigue contributed to his accident.

To start, a jury could find Ghaleb acted as a reasonable, wakeful person would. The district court itself stated that the jury could have reasonably concluded that "no one was at fault" for the accident. *Ghaleb*, WL 28986, at *7. Presumably, this could include Ghaleb too. And in fact, Ghaleb touted testimony by Chief Warren that Ghaleb "did nothing wrong" during the rope maneuver. Renewed Mot. for JMOL at 7, R. 79, PID 1353. Ghaleb directs us to no "overwhelming evidence" which only permits a jury to find that something he did contributed to the accident.

Moreover, even if the jury believed that Ghaleb put himself at risk, it did not need to accept that he did so due to fatigue. On this front, the district court provided unsatisfactory reasoning to find causation as a matter of law. Unlike a hypothetical safety railing, the court lacked a concrete, realistic way to insert a "wakeful and ready" Ghaleb into this situation. Per Chief Warren's testimony, Ghaleb left his position holding the cable to affix a heaving line to the cable while the others held up the cable. The jury could have reasonably found that even an alert Ghaleb who knew his colleagues had already hoisted the heavy cable off the deck would still have quickly affixed the heaving line without stopping and restarting the maneuver. That is, the jury could have considered Ghaleb's decision something a rested sailor would do. Certainly, the jury could reasonably have found that Ghaleb exercised poor judgment and then attributed the poor judgment to fatigue. His actions and decisions lacked any definitive characteristic, however, that requires one to infer a causal connection to fatigue.

Further, the district court's decision to find a causal relationship as a matter of law is particularly troubling given that Ghaleb never asserted that his behavior led to the accident—still less that he made any mistake because of fatigue. *See Scoran v. Overseas Shipholding Grp., Inc.*, 703 F. Supp. 2d 437, 454 (S.D.N.Y. 2010) (holding that causation could not be found as a matter of law, in part, because "Plaintiff did not testify at his accident that fatigue actually caused his injuries"). Essentially, the district court fashioned a theory for Ghaleb entirely on its own. Undoubtedly, it was a plausible theory. But the evidence did not demand only the district court's conclusion. The court inferred causation from the facts in a manner inconsistent with the requirement that it view the evidence in the light most favorable to American Steamship. And in doing so, the court ignored the burden of persuasion. American Steamship, contrary to Ghaleb's contentions, never had to explain why Ghaleb stayed put.[2] Whether the jury believed Ghaleb made a mistake unaided by fatigue or acted prudently, either conclusion was reasonable.

The jury could also have reasonably concluded the other crew members' fatigue played no part in the accident. Although the district court found Chief Warren worked excessive hours, it never linked his actions to Ghaleb's injury in its analysis. On appeal, Ghaleb reasserts his theories about Chief Warren's negligent supervision; now, he chalks the Chief's supposed errors up to poor judgment induced by fatigue. But the jury's negligence verdict shows it found Chief Warren faultless. As the district court recognized in denying Ghaleb's JMOL motion on

---

[2] Ghaleb argues that the district court erred in not giving his proposed jury instruction on a burden-shifting admiralty rule that might have required American Steamship to disprove causation—the so-called *Pennsylvania* Rule. Ghaleb never objected to the instruction's exclusion, however, and the court never made a definitive ruling on the record against the instruction. Thus, we review its omission for plain error rather than an abuse of discretion. *See* Fed. R. Civ. P. 51(d)(1)(B), (d)(2). If the court's failure to instruct on the Rule was an error at all, it was not one that was "plain." *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that an error must be "clear" or "obvious" under "current law" to qualify for appellate review under Fed. R. Crim. P. 52(b)'s "plain-error" standard). This circuit has never applied *The Pennsylvania* Rule outside the context of collisions. *See In re Buccina*, No. 16-0303, 2016 WL 3597632, at *2 (6th Cir. July 1, 2016) (stating that this court's previous applications show that the rule applies "only to collisions"). The district court's failure to apply the rule to a personal injury case unrelated to a collision, even if an error, was not one we can call "clear" or "obvious" under "current law."

negligence, Ghaleb "testified that Chief Warren told him to 'throw the line, that's it.'" *Ghaleb*, No. 13-13822, 2016 WL 28986, at *6. And when asked whether Chief Warren told him what to do, Ghaleb said, "I know what I do." *Id.* Given that the evidence permitted a finding that Chief Warren lacked any fault in Ghaleb's accident, it did not demand an inference that his fatigue contributed to Ghaleb's accident.

The district court also found causation by crediting Al-Qasemi's testimony that he never complained about the icy conditions on the deck because he worked too many hours. Ghaleb extends this failure-to-warn theory to Ahmed as well. It seems improbable that when the jury considered—and rejected—a general negligence theory that it never contemplated the deck's conditions. And Chief Warren testified that conditions were generally good. If the jury believed the Chief, as it was free to do, then neither Al-Qasemi nor Ahmed—tired or rested—would have complained. On this point, the district court erred in weighing Ahmed or Al-Qasemi's post-hoc testimony against Chief Warren's testimony. A jury could find both accounts contrived, but ultimately the jury was at liberty to choose who it believed. *See Scoran*, 703 F. Supp. 2d at 454 (holding that causation could not be found as a matter of law, in part, because the plaintiff never complained about fatigue on the day of his accident). If the jury found Chief Warren credible, it could also have concluded Ahmed had a chance slip on ice on an otherwise clean deck. This slip and the accompanying cable drop need not result from anyone's carelessness—much less their fatigue-induced carelessness.

The dissent disagrees. It would find that fatigue contributed to the accident as a matter of law. It reasons from an uncontestable premise: fatigue can affect a sailor's performance. It then concludes that a reasonable jury was required to find that fatigue actually contributed to Ahmed slipping or the sailors dropping the cable.

Fatigue could hypothetically contribute to almost any mishap, however. A plaintiff can always argue that someone might have acted differently if rested. But even when a plaintiff establishes fatigue's presence as a matter of law, JMOL does not necessarily follow. Whether Ghaleb established fatigue's role in his accident *as a matter of law* comes down to a counterfactual: could a rested sailor have slipped or dropped a cable? Because he could, Ghaleb had the burden to convince a jury that fatigue actually contributed to that happening here. Unfortunately for Ghaleb, he failed to do so.

## IV

As the dissent makes clear, Ghaleb had a decent case. With some juries, he might have won. But the Jones Act is not a workers' compensation statute. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). Ghaleb had two weeks at trial to prove to the jury by a preponderance of the evidence that someone's fatigue contributed to his accident. After the jury rejected this claim, he bore the burden to show that it could not reasonably come to any different conclusion. Ghaleb failed both times. We REVERSE the district court's decision granting judgment as a matter of law to Ghaleb and REMAND with instructions to enter judgment for American Steamship.

**HELENE N. WHITE, dissenting.** The majority opinion lays out the governing legal principles clearly and accurately, and makes an appealing argument for reversal. I respectfully dissent, however, because viewing the evidence in the light most favorable to defendant, and drawing all permissible inferences from that evidence in the same light, no reasonable jury could fail to conclude that crew fatigue played some part in the accident, however slight.

As the majority acknowledges, causation under the Jones Act differs from causation as generally understood in negligence law. Under the Jones Act, which adopted the very minimal causation test of the analogous Federal Employers' Liability Act (FELA), the causation inquiry is whether the employer's negligence "played any part, *even the slightest*, in producing the injury . . . for which damages are sought." *See Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 505 (1957) (emphasis added) (discussing causation under the FELA); *see also Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1463 (6th Cir. 1993) (citing *Gosnell v. Sea-Land Serv., Inc.*, 782 F.2d 464, 467 (4th Cir. 1986)) ("Under the Jones Act, a plaintiff need only show that the defendant's negligence, however slight, contributed in some way toward causing the plaintiff's injuries."). Although this standard is not strict liability, it is "featherweight." *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (5th Cir. 1996); *Evans v. United Arab Shipping Co. S.A.G.*, 4 F.3d 207, 213 (3rd Cir. 1993).

The Jones Act provides that crew members on Great Lakes towing vessels may only be required to work 8 hours a day. Further, the Act *prohibits* crew members from working more than 15 hours in a 24-hour period, or 36 hours in a 72-hour period, regardless of their willingness to work longer. 46 U.S.C. § 8104(c).

Working excessive hours on a commercial vessel causes fatigue, endangering crew, non-crew, and property. Section 8104(c) is a safety statute intended to forestall that danger. Here,

Ghaleb worked 21 of the 24 hours preceding his accident (Ghaleb Time Sheets, RR. 79-21, 79-22); Chief Warren worked 18 of the 24 hours preceding the accident (Chief Warren Time Sheets, R. 79-13, PID 1459–60); Al-Qasemi worked 20.5 of the preceding 24 hours (Al-Qasemi Time Sheets, Joint Ex. BB); and Ahmed worked 17 of the preceding 24 hours (Chief Warren Trial Tr., R. 115, PID 3830–31).[1] The question for the jury was whether crew fatigue caused by these excessive work hours played "even the slightest" part in causing the accident. And the question for the district court on plaintiff's motion for judgment as a matter of law (JMOL) was whether a reasonable jury could fail to find that crew fatigue had *some* causal effect, however slight, on plaintiff's accident. A reasonable jury could not have so found.

The crew's hours were not minor deviations from a strict statutory standard that may or may not have resulted in actual fatigue. To the contrary, ordinary, common experience would not only permit, but also compel, a trier of fact to find that the crew involved in the accident, who had worked well beyond the statutory limitations, were fatigued at the time of the accident.

The unrebutted facts of plaintiff's negligence per se claim are that plaintiff stood in a position on the deck that put him in the path of the cable; Ahmed dropped the cable, precipitating the accident; and at the time of the accident, plaintiff, Chief Warren, Al-Qasemi, and Ahmed had all worked well in excess of the statute's maximum hours. Despite their fatigue, plaintiff, Chief Warren, Al-Qasemi, and Ahmed engaged in a potentially dangerous, physically challenging maneuver involving a heavy cable and at least some ice on the deck. Ahmed was the first crew member to drop the cable, setting the accident into motion. Focusing just on Ahmed, if fatigue was even a slight cause for his slipping and dropping the cable, that would suffice to establish Jones Act causation. In his deposition, which was read to the jury, Ahmed testified: "I'm the

---

[1] In addition, at the time of the accident, Chief Warren had worked 40 of the preceding 57 hours and Al-Qasemi had worked 50.5 of the preceding 57 hours.

first person who I slipped [sic], I drop the cable, too. The cable went down, it was going fast because it was already going down and it's heavy." Ahmed Dep., R. 101-2, PID 2315. Ahmed further testified that "[e]verybody was trying to leave to go home . . . [e]verybody was in a hurry," and that the cable was "heavy, very heavy." *Id.* at PID 2327–28. The deck, according to Ahmed, was "icy and slippery," and it was "still freezing, it was still ice." *Id.* at PID 2327.

Al-Qasemi's deposition was also read to the jury. He stood behind Ahmed when the cable fell, and his testimony emphasized the cable's weight: "Then [Ahmed] slipped, then the power cables go down and everywhere, he's drop [sic] it from his hand because it's too heavy and they hit [plaintiff.]" Al-Qasemi Dep., R. 101-4, PID 2385. When asked whether he was tired at the time of the accident, Al-Qasemi replied "[o]f course, 17 hours and we only got like a couple hours to sleep." *Id.* at PID 2397.

There is no disputing that Ahmed dropped the cable. Although he testified that the crew was in a hurry and wanted to go home, and that the deck was icy, he did not directly attribute his slipping and dropping the cable to any particular cause. Both Ahmed and Al-Qasemi remarked that the cable was heavy, and Al-Qasemi attributed Ahmed's dropping the cable to its weight. Thus, as to Ahmed, the jury had the following facts: (1) when Ahmed slipped and dropped the cable, he had been working excessive hours in a physically demanding job, (2) he perceived the cable as heavy, (3) Al-Qasemi perceived the cable's drop as being caused by its weight, (4) Al-Qasemi, who had been working similar hours to Ahmed, was tired because of the limited sleep the crew was getting, and (5) the deck had ice.[2]

---

[2] At trial, no one disputed that there was *some* icing on the deck at the time of the accident, but there was disagreement on the overall condition. Chief Warren testified that there was "[a] little ice here and there. A little– you know, real thin, but there was a lot of sand out. There was a lot of salt out. There was no issues walking." Chief Warren Trial Tr., R. 114, PID 3719. Plaintiff testified that there were at least several inches of ice all over the deck, describing the condition as both "glassy" and "rocky." Ghaleb Trial Tr., R. 109, PID 3090. In closing argument, plaintiff stated that Ahmed slipped on ice, Trial Tr., Vol. 10, at 1242, and the majority reasonably assumes this fact for purposes of the JMOL. *See* Maj. Op. at 9.

The majority correctly observes that awarding judgment as a matter of law to the party bearing the burden of proof should occur only in the rare case that the evidence "is overwhelming, leaving no room for the jury to draw significant inferences in favor of the [defendant]." Maj. Op. at 5 (citation omitted). A plaintiff seeking JMOL in the face of the jury's verdict has a heavy burden because reasonable juries may examine evidence and come to a range of conclusions based on it. That includes conclusions that may surprise observers of the trial but that are reasonably supported by the evidence. In such cases, judges may not substitute their own judgment for that of the jury. And the fact that the evidence supports a particular verdict does not mean that it compels it.

Even under this high standard, however, the district court did not err in its legal determination that a reasonable jury, instructed on the featherweight causation burden and presented with the unrebutted facts, could not fail to find defendant liable. Here, the jury unreasonably found either that the workers were not fatigued, or that Ghaleb failed to establish that it is more likely than not that fatigue due to the excessive work hours was "even the slightest" cause of the accident. But just looking at the first event in the chain that led to the accident—Ahmed's slipping and dropping the cable—shows that such jury findings are at odds with the direct and inferential evidence that the hours worked were extreme and the cable was heavy.

The majority suggests that the jury was free to conclude that Ahmed had a "chance slip on ice on an otherwise clean deck" that was unrelated to fatigue. Maj. Op. at 9. Assuming that Ahmed did slip because of ice, it does not follow that fatigue played no role in the accident. Accepting that ice was a factor, deck ice in cold weather, like the weight of the heavy cable, is a foreseeable work condition that requires balance, strength, and mental and physical

responsiveness, all of which are compromised by fatigue. The majority finds the counterfactual question "could a rested sailor have slipped or dropped a cable?" to be dispositive. Maj. Op. at 10. This framing focuses on whether accidents of this type can occur absent fatigue. No doubt they can, but that is not the question here. Rather, the question is whether any reasonable juror could fail to find that Ghaleb met his featherweight burden to show that fatigue was at least a slight cause of *this* accident. That rested sailors could also slip or drop a cable does not answer this question given that the sailors involved here had worked at a physical job for between 17 and 21 hours in the preceding 24. Further, absent evidence of an external force, the fact that properly rested sailors could also have slipped or dropped a cable does not undermine that an overtired and fatigued sailor who slips or drops a cable more likely than not failed to avoid doing so at least in slight part due to fatigue. The majority essentially posits that it is reasonable to find that each participant performed the cable maneuver with the same vigilance, steadiness, and strength he would have possessed had he not worked the excessive hours and not been fatigued. The failure to perform the cable maneuver with the vigilance, steadiness, and strength of a properly rested crew satisfied the requirement that fatigue had a role, however slight, in the accident.

Because the district court's JMOL analysis focused on Ghaleb's fatigue, the majority focuses on the evidence that Ghaleb did not contribute to the accident. But the motion for JMOL did not exclusively focus on Ghaleb, and the ultimate question presented below and on appeal is whether a reasonable jury could conclude that Ghaleb failed to show that the grossly excessive work hours had even the slightest role in causing the accident.

Because I conclude that the grant of JMOL was proper, I would affirm.